(36 App. Div. 17.)

### O'BRIEN et al. v. EAST RIVER BRIDGE CO.

(Supreme Court, Appellate Division, First Department. December 30, 1898.)

BANKS—INSOLVENCY—ILLEGAL PREFERENCES—RECOVERY OF ASSETS.

The president of a corporation, who was also a director of a bank, obtained knowledge, as director, that the bank was insolvent and would close the next day. He thereupon executed a check for the corporation's deposit in the bank, and caused it to be collected through the clearing house from the insolvent's funds which he knew were in the possession of the bank through which the insolvent cleared. *Held*, that the transaction was an attempt by the bank to transfer its assets "by" one of its officers with intent to prefer a creditor, prohibited by Stock Corporation Law, § 48, and hence that the receivers of the bank were entitled to recover the amount of the check from the corporation.

Ingraham, J., dissenting.

Appeal from judgment on report of referee.

Action by Miles M. O'Brien and another, receivers of the Madison Square Bank, against the East River Bridge Company. From a judgment on a referee's report dismissing the complaint, complainants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Samuel Untermyer, for appellants.
Eugene Treadwell, for respondent.

PATTERSON, J. This action was brought by the receivers of the Madison Square Bank to recover from the defendant a sum of money to which they claimed they were entitled under the provisions of section 48 of the stock corporation law, which reads as follows:

"No corporation which shall have refused to pay any of its notes or other obligations when due in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation, by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder, when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. Every person receiving by means of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees. No stockholder of any such corporation shall make any transfer of his stock therein to any person in contemplation of its insolvency. Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

The material facts of the case are without dispute. On the 8th of August, 1893, the defendant was a depositor in the Madison Square Bank, and it had standing to its credit on the books of the bank on that day the sum of $50,000. As to that amount, the ordinary relation of debtor and creditor, and no other, existed between the bank and the depositor. On the night of the 8th of August, 1893, it became known to Frederick Uhlman, a director of the Madison Square Bank and also the president of the East River Bridge Company, that the

bank was insolvent, or in imminent danger of insolvency, and that it would be closed the following day. Frederick Uhlman also knew that the St. Nicholas Bank was the agent at the clearing house of the Madison Square Bank, and that on the 8th of August, 1893, the St. Nicholas Bank had in its possession a large amount of securities belonging to the Madison Square Bank, and that it held such securities as collateral for any and all obligations as agent of the Madison Square Bank. He also knew that the St. Nicholas Bank had notified the clearing house that it would cease to act for the Madison Square Bank, and that the St. Nicholas Bank, by the rules and regulations of the clearing house, was responsible for all checks of the Madison Square Bank that would be presented at the clearing house in the exchanges on the morning of the 9th of August. All this knowledge was acquired by Frederick Uhlman as a director of the Madison Square Bank. On the night of August 8th, Simon Uhlman, who was largely interested in the stock of the East River Bridge Company, learned of the imminency of insolvency of the Madison Square Bank, and that it would probably be closed the following morning. Thereupon he caused a check to be filled up, drawn upon the Madison Square Bank, for $50,000, and took it to the treasurer of the defendant at Brooklyn, where it was signed by such treasurer at about 11 o'clock at night. That being done, Simon Uhlman returned to New York City with the check, and handed it to Frederick Uhlman, who also signed it as president of the East River Bridge Company, and retained it in his possession overnight. Early on the morning of the 9th of August, Frederick Uhlman took the check to the Hanover National Bank, and instructed the authorities of that bank to have it presented at the clearing house that morning, so that it might be paid by the St. Nicholas Bank in the exchanges of that morning, and thus be credited to the East River Bridge Company, and a withdrawal effected of so much from the funds and moneys or securities of the Madison Square Bank under the control of the St. Nicholas Bank. The check was presented at, and passed through, the clearing house. The East River Bridge Company received a credit with the Hanover Bank, and thus the transfer of $50,000 was completely made from the Madison Square Bank to the defendant. The Madison Square Bank was closed on the morning of the 9th of August, or, more properly speaking, was never opened for business after the 8th, and went into insolvency. Under those circumstances, the receivers claim that there was transferred by a director of the Madison Square Bank funds and moneys of that bank to a creditor, with the intent on the part of the director to give such creditor a preference, contrary to the provisions of the statute, such transfer being made when the bank was insolvent or its insolvency was imminent, and that the transfer was void, and the defendant liable to account for the money. The issues in the action were referred to a referee to hear, try, and determine. He decided that the complaint should be dismissed upon the merits. Upon such decision judgment was rendered in favor of the defendant, and from that judgment the plaintiffs appeal.

If the construction given by the learned referee to section 48 of the stock corporation law is the correct one, no other course could have been justified under the proofs than was taken by him in directing judg-

ment for the defendant; for, as he very properly states, if the transaction, the subject of inquiry in this case, amounted to an illegal preference, it must be solely because of the part taken by Frederick Uhlman in that transaction. But we are not able to adopt the referee's interpretation of the statute. While it is one that may be said to be in derogation of the common law,—for at the common law preferences were not illegal,—yet it must be so construed that its purpose shall be attained, and not subverted or thwarted. Statutes, like contracts, are to be construed ut res magis valeat quam pereat, for that interpretation "furnishes matter for every clause [and requirement] of the statute to work and operate upon." The learned referee has considered that the interdiction of the statute applies only to the corporation, or to the officers or directors acting officially or as officers or directors. We do not think that is the proper construction, but, on the contrary, that the prohibition of the statute applies to individuals who stand in the various relationships mentioned to the corporation, and that no act of theirs or either of them shall be valid when it effects, directly or indirectly, a transfer of corporate property against the terms of the statute.

The preposition "by," as used in the forty-eighth section of the statute in this connection, is equivalent to the phrase, "through the means, act, or instrumentality of"; and that section may well be paraphrased so as to read:

"No conveyance, assignment or transfer of any property of any such corporation by it, or effected through the means, act or instrumentality of any one who is an officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it, or through the means, act or instrumentality of any one who is such officer, director or stockholder, when the corporation is insolvent or its insolvency is imminent, with the intent of giving preference to any particular creditor over other creditors of the corporation, shall be valid."

We do not think it is an essential condition that the director shall be acting officially as a director in making the transfer. An individual director cannot make an official transfer of assets of a corporation by any inherent authority derived from the mere fact of his being a director. The statute refers to a person being a director (its words mean "any one who is"); and to hold otherwise would be merely saying that the words "officer" and "director" are utterly meaningless in the connection in which they are used. What the statute condemns is a conveyance or transfer effected in a particular way and with a certain intent; not necessarily a corporate intent, but an intent of a person being an officer, director, or stockholder to give a preference to any particular creditor over other creditors. It contemplates the situation of officers, directors, or stockholders having, by reason of their relation to the corporation, opportunities of transferring or assigning its property and assets in some way by which a preference may be obtained by a creditor; and, whether the acts are official or unofficial, it is the purpose of the statute to make them invalid. As was said in Throop v. Lithographic Co., 58 Hun, 149, 11 N. Y. Supp. 532, referring to one purpose of this section of the statute:

"It seems to have been the intention of the legislature to prevent persons occupying confidential relations towards corporations from, either directly or

indirectly, profiting by the information which they have acquired because of their relation to the corporation, and which information they could use to the detriment of the general creditors of the corporation. Therefore it has been provided that, where a corporation is insolvent, an officer of such corporation shall be unable to take any of the property of the corporation to pay his particular debt."

That was said in a case in which a director of a corporation endeavored to secure a preference to himself; but the same reasoning applies so far as the disability of the officer or director is concerned. He may not use the information or knowledge he acquires by reason of his confidential relation for his own benefit. By parity of reasoning, he may not use the knowledge or information he derives from his confidential relationship for any purpose forbidden by the statute. Preferences to or by officers, directors, or stockholders fall under the same condemnation. The ultimate purpose of the section is to secure the assets of the corporation for equality of distribution among its creditors; and, to accomplish that object, any disposition of those assets, or any part of them, made with the intent and under the circumstances mentioned in the statute, by any of the individuals standing in the relation to the corporation of those named in the statute, is declared void.

It remains to consider whether the acts of Frederick Uhlman were of such a character as to bring them within the operation of section 48 of the stock corporation law. It is urged in this connection that the section does not apply to a banking corporation. But that question was settled in this court by what was decided in Hirshfeld v. Bopp, 27 App. Div. 180, 50 N. Y. Supp. 676. Frederick Uhlman's dealing with the check after it was drawn establishes the intent. His active agency in getting it paid from the funds of the bank in which he was a director, by the unusual method of taking it on the 9th of August to the Hanover National Bank and inducing them to pass it through the exchanges, connects him with the transfer of the Madison Square Bank's funds to pay a creditor preferentially, within the meaning of the statute. Whether it was his scheme or not, he executed it. He caused the transfer of those moneys to be made. It is entirely immaterial by what method the transfer was effected, if it were such as matter of fact. The act took so much of the Madison Square Bank's money, and passed it over to a simple creditor; and that was done by a person who was a director of the Madison Square Bank, knowing of the insolvency of the bank and with the intent to give a preference. That act defines itself. Here, then, was the case of a director of the Madison Square Bank using his knowledge (not only of the actual or impending insolvency of that bank, but of the fact that the St. Nicholas Bank had a large amount of the securities of the Madison Square Bank; of the fact that whatever checks drawn on the Madison Square Bank should go through the clearing house on the morning of the 9th of August would be paid; of the fact that the St. Nicholas Bank could indemnify itself for the payment of those checks; and of the fact that the $50,000 check thus drawn and presented out of the due course of business would be paid) in such manner as to secure a preference to the East River Bridge Company, and intending that the assets of the Madison Square Bank should be proportionally depleted. This result would not have

been accomplished but for the acts of a director of the Madison Square Bank.   Frederick Uhlman obtained his knowledge as a director of the Madison Square Bank, and unless we are altogether wrong in the interpretation of the statute, and in our understanding of what its purpose is, the East River Bridge Company is not entitled to hold the money as against the plaintiffs.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellants to abide the event.   All concur, except INGRAHAM, J., dissenting.

McLAUGHLIN, J.   I concur in the opinion of Mr. Justice PATTERSON.   The statute under consideration is a beneficial one, and its effect should not be destroyed by a narrow, technical, or forced construction.   The object to be accomplished by it is to secure equality among all the creditors of a corporation, and to prevent fraudulent transfers in derogation or in fraud of their rights.   To that end the statute provides that:

"No conveyance, assignment or transfer of any property of any such corporation, by it or by any officer, director or a stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder, when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid."

The act of Frederick Uhlman in procuring the payment of the check in question to the defendant was prohibited both by the letter and spirit of the statute.   This was the situation: He was one of the directors of the Madison Square Bank.   He was also president of the defendant, and owned or controlled one-tenth of its entire capital stock.   On the evening of August 8, 1893, he went to the bank, and there had a consultation with the officers and certain of the directors; the result of which was that he then became informed that the bank was insolvent or its insolvency imminent, and that there was little or no probability of its resuming business on the following morning.   He left the bank, and immediately took advantage of the knowledge which he had thus acquired, as such director, for the benefit of the defendant, and to the prejudice of the other creditors of the bank, by procuring the payment of the check in the manner described in the prevailing opinion.   This he had no right to do.   As a director of the bank, he occupied a trust relation to its creditors, and it was his duty, the insolvency of the bank being at least imminent, to preserve all the assets, so far as he could, for the benefit of all the creditors.   The intent of the legislature, as clearly manifest in this statute, is to prevent persons occupying a confidential relation, which Uhlman did, to the bank, from either directly or indirectly profiting by information acquired because of that relation, to the detriment of the general creditors of the corporation. Throop v. Lithographic Co., 58 Hun, 149, 11 N. Y. Supp. 532; Id., 125 N. Y. 530, 26 N. E. 742.

It has, however, been suggested, not by the learned referee or the counsel for the respondent, but in the dissenting opinion, that the provisions of the forty-eighth section of the stock corporation law of 1892 have made a radical change in the statute relating to transfers or as-

signments of property by corporations when insolvent or when insolvency is imminent.  That suggestion is based upon the use of the word "such" in the second subdivision of the forty-eighth section of the statute, and it is sought to be inferred from the use of that word that the policy of the state with reference to insolvent corporations, as it had been declared by statute from the year 1825, has, in effect, been annulled.  It is true that a change has been made, which authorizes a corporation to make an assignment for the benefit of creditors without preferences, but until the act of 1892 was passed no doubt existed as to the policy of the statute or the construction of section 4 of the "Act relating to certain corporations" (1 Rev. St. p. 603), which was a re-enactment of the sixth section of chapter 325 of the Laws of 1825.  The provisions of the Revised Statutes were construed in Harris v. Thompson, 15 Barb. 62, and it was there declared that the provision which enacted that any corporation which shall have refused to pay any of its notes or other obligations should not assign any of its property to its officers or directors for the payment of any debt related to one prohibition only, and that the provision which enacted that it should not be lawful to make any assignment in contemplation of insolvency of "such company" to any person or persons whatever, and declaring a transfer so made to any officer, stockholder, or other person to be utterly void, related to an entirely different state of circumstances.  In the cases first provided for, evidence of the refusal to pay notes or current obligations was required to establish a cause of action; whereas, in the cases provided for in the second clause, no such evidence was required.  See, also, Sibell v. Remsen, 33 N. Y. 95.  In the construction given to that statute it has always been assumed by the courts that this provision was to prevent unjust discrimination among creditors of any insolvent corporation making preferential payment when it was insolvent or its insolvency imminent.  Varnum v. Hart, 119 N. Y. 101, 23 N. E. 183.  It has always been understood, so far as I am aware, since the enactment of the Revised Statutes, that this provision applied to any insolvent corporation.  In Coats v. Donnell, 94 N. Y. 168, the court of appeals so held, saying:  "The Revised Statutes prohibit preferences of insolvent corporations."  I find nothing in the statute under consideration to indicate that the policy of the law has been changed by the use of the word "such," or that the condition of insolvency or the imminency of insolvency which would make a preferential transfer invalid relates only to those corporations which have failed to pay their current obligations on demand or when due. Such construction would take out of the operation of the forty-eighth section of the statute every corporation which did not issue negotiable paper, but continued to pay its current obligations, notwithstanding the fact that it might be hopelessly insolvent, and thus all its property might be exhausted in payment of a creditor in which the directors or some of them were personally interested.  I cannot believe that the legislature ever intended simply by the use of an adjective to accomplish such result.

It is also said that the act prohibited by the statute is the act of the corporation itself, or of some one acting for or on its behalf.  To give the statute this construction is to take out of its words contained there-

in, and thereby destroy, one of the purposes sought to be accomplished by it. But this question seems to have been settled by the court of appeals in Throop v. Lithographic Co., 125 N. Y. 530, 26 N. E. 742. There the plaintiff, a trustee of a corporation, acting, not in collusion with, but in hostility to, the corporation and the other trustees, in an action to recover money loaned, procured an attachment, which was thereafter vacated, and the court of appeals, in affirming the order vacating the attachment, said:

"The plaintiff, in commencing this action and procuring his attachment, was not acting in collusion with the trustees, but distinctly in hostility to the board of directors and the other officers of the company. * * * It is true that the plaintiff, as director only, had no power over the corporate assets. He could neither assign nor transfer them to himself, or any one else, by his own act. But the plaintiff, in place of procuring an assignment or transfer by the voluntary action of the corporation, procured what is equivalent, by legal process issued on his application. Construing the language of the statute in connection with its obvious policy, we think a construction which disables an officer of an insolvent corporation from acquiring a preferential lien on the corporate assets by legal process is justified."

For these reasons I concur with Mr. Justice PATTERSON that the judgment should be reversed.

INGRAHAM, J. I cannot concur in Mr. Justice PATTERSON'S construction of section 48 of the stock corporation law. Laws 1892, c. 688. That section first provides that:

"No corporation which shall have refused to pay any of its notes or other obligations when due in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration, than the full value of the property paid in cash."

The prohibition contained in this clause applies only to a corporation which shall have refused to pay any of its notes or other obligations when due; and such a corporation, namely, one which shall have refused to pay any of its notes or other obligations when due, is absolutely prohibited from transferring any of its property to any of its officers, directors, or stockholders directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. The section then continues:

"No conveyance, assignment or transfer of any property of any such corporation, by it or by any officer, director or a stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder, when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid."

Here is a prohibition of a payment to any person with the intent of giving a preference to any particular creditor. But both clauses of the section apply to the same corporation, viz. a corporation which shall have refused to pay any of its notes or other obligations when due; prohibiting it—First, from making a transfer of any of its property to any of its officers, directors, or stockholders except upon the payment of the full value of the property in cash; and, second, from making any conveyance, assignment, or transfer of any of its property, or making

any payment, suffering any judgment, creating any lien, or giving any security, when such corporation, namely, a corporation which shall have refused to pay any of its notes or other obligations when due, is insolvent, or insolvency is imminent, with intent of giving a preference. The statute in force before the enactment of the stock corporation law was materially changed by the latter act. In the Revised Statutes (1 Rev. St. p. 603, § 4) it was provided that when any incorporated company shall have refused to pay any of its notes, or other evidences of debt, it should not be lawful for such company to transfer any of its property to any officer or stockholder of such company, directly or indirectly, for the payment of any debt; and it should not be lawful to make any transfer or assignment, in contemplation of the insolvency of such company, to any person or persons whatever. It was held by the supreme court in the case of Harris v. Thompson, 15 Barb. 64, that the words "such company," in the second clause of this section, referred to an incorporated company, and the words used were capable of that construction. This provision of the Revised Statutes was repealed by section 23 of the general corporation law (chapter 563, Laws 1890). By section 48 of chapter 564 of the Laws of 1890, which became a law at the same time as did the general corporation law, it was provided that no corporation which shall have refused to pay any of its notes, or other obligations when due, shall assign any of its property to any of its officers, directors, or stockholders for the payment of any debt; and no officer, director, or stockholder thereof shall make any transfer or assignment of its property, or of any stock therein, to any person in contemplation of its insolvency. There can be no doubt, I think, but that this section would only affect a corporation which shall have refused to pay any of its notes or other obligations when due. The second prohibition contained in the section was that no officer, director, or stockholder thereof, namely, a corporation which shall have refused to pay any of its notes, or other obligations when due, shall make any transfer or assignment to any person in contemplation of its insolvency. This section was amended by chapter 688 of the Laws of 1892. Section 48 of the act as then amended is the section now under consideration, and to give the second prohibition contained in this section a construction which would make it apply to all corporations would be disregarding the express language used, which confines such a prohibition to such a corporation as had been before named in the section, and would make the second prohibition refer, not to such a corporation, but to all corporations, which, it seems to me, would be contrary to the express meaning of the words used.

There is no evidence to show that, prior to August 9th, the Madison Square Bank had refused to pay any of its notes or other obligations when due. The bank was open for business, and apparently did pay, on demand, all its obligations up to 3 o'clock on August 8th, the day the check in question was drawn. It had on deposit on the night of August 8th, with the St. Nicholas Bank, its clearing-house agent, about $28,000, and that bank further held a large amount of bills receivable and other collateral, belonging to the Madison Square Bank, as security for any amount owing by the Madison Square Bank to it; and the officers of the St. Nicholas Bank apparently had no knowledge of

the Madison Square Bank's insolvency prior to the morning of August 8, 1893; nor do I think that the evidence in this case shows that there was a conveyance, assignment, or transfer of any property, or any payment made by this bank, or any officer, director, or stockholder thereof, with the intent of giving a preference to the defendant as a creditor.

I concur with the view taken by the learned referee in his opinion as to the construction of this statute. As before stated, the section in question prohibits two acts of the bank or its officers: First, the transfer of any of its property to any of its officers, directors, or stockholders, directly or indirectly, for the payment of any debt, or for any other consideration than the full payment of the value of the property in cash. This prohibition is absolute. When a bank has failed to pay any of its notes or obligations when due, no officer, director, or stockholder thereof can receive from the bank or its officers any property of the corporation for any other consideration than the full value of the property, paid in cash. The object of the statute is to prevent the persons named from receiving any property from the bank upon any other consideration, after it has declared its inability to meet its accruing obligations. This does not depend upon the solvency or insolvency of the bank, nor upon the intent when such transfer was made. The second prohibition is that no such corporation, nor its officers, directors, or stockholders, shall make any conveyance, assignment, or transfer to any person, when the corporation is insolvent or insolvency is imminent, with the intent of giving a preference to a particular creditor. The act that is here prohibited is an act of the bank, or any one acting for on on behalf of the bank, its agents, or those in charge of its affairs, whether as officers, directors, or stockholders, creating a preference. The intent necessary to make such a transfer illegal is an intent existing on behalf of the corporation or those assuming to act for it in making the transfer. It seems to me that the act prohibited must be an act of the corporation, or an officer, director, or stockholder acting for the corporation, by whom the property is transferred, with the intent of preferring a particular creditor. It seems that this construction of the statute was directly approved by the court of appeals in the case of French v. Andrews, 145 N. Y. 444, 40 N. E. 214. In that case the court held that "merely permitting a creditor to obtain a judgment in the regular course of legal proceedings is not, on the part of the officers of the corporation, a transfer or assignment of the property of the corporation, within the meaning of the statute quoted. And the conduct of the treasurer in giving notes which might be sued by the defendant in the municipal court" did not bring the case within the contemplation of the statute. Now, in this case, a director of this bank, who is president of the defendant, a corporation who was a depositor in the bank, signed, as president of the defendant, a check upon the Madison Square Bank, and delivered that check to another bank, to be credited to the account of the defendant. It could not be claimed that either of these acts was the act of a director of the Madison Square Bank, but they were the acts of the defendant, solely in the interest of such defendant, and had no relation to the position of the president of the defendant as a director of the Madison

Square Bank; and no authority that he derived as such director had any relation to his act of signing this check, or delivering it to the Hanover National Bank for collection. That check would have been collected as it was, whether Uhlman had been a director of the Madison Square Bank or not; and no act of his as director had anything to do with the execution or collection of the check. The check, when presented, was paid by the St. Nicholas Bank under a contract which it had with the Madison Square Bank, and not as the agent of the Madison Square Bank. That was expressly determined in the case of O'Brien v. Grant, 146 N. Y. 163, 40 N. E. 871. Neither the Madison Square Bank, nor any of its officers, directors, or stockholders, transferred any of the property of the bank, or made any payment by the bank to the defendant. If Uhlman, as director of the bank, had obtained any money from the bank after it had refused to pay its obligations, either in payment of a debt or for any other consideration except in payment of its full value in cash to the bank, that transfer would have been void, under the first clause of the section of the banking law before referred to. But this payment to the defendant was not a payment by the bank, or by any of its officers, directors, or stockholders, and it therefore seems to me that the conclusion arrived at by the learned referee was correct, and the judgment should be affirmed.