in her behalf. The sale of the goods to the son of defendant's intestate is shown beyond question. While the son's age is not specifically shown, we think enough has been shown to establish a prima facie case of his infancy. The plaintiff should have been allowed to show the appearance of the boy as bearing upon the question of his age, but such evidence was excluded by the city judge. The boy, however, was an underclassman in Cornell University. He was spoken of as "the boy" by defendant's intestate in a letter written to the plaintiff. In that letter the purchase by the boy was in fact ratified, and the liability of the defendant's intestate was acknowledged. In the absence of any evidence on the part of the defendant and with the actual sale undisputed and unquestioned, we think it should be held that a prima facie case was made which called upon the defendant to show either that the boy was of age, or that the goods were not necessaries within the provision of the law. Therefore the judgment cannot be said to have been without evidence.

We are unable to find any valid ground for the reversal of the judgment, and it follows that the judgment of the County Court must be reversed, with costs, and the judgment of the City Court affirmed.

Judgment reversed, with costs, and judgment of the City Court affirmed. All concur.

---

(156 App. Div. 724.)

### CÆSAR et al. v. BERNARD et al.

(Supreme Court, Appellate Division, First Department. May 9, 1913.)

1. CORPORATIONS (§ 333*)—LIABILITY OF DIRECTORS—EXTENT OF LIABILITY.

Stock Corporation Law (Laws 1909, c. 61; Consol. Laws 1909, c. 59) § 66, provides that no corporation, which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any officer, director, or stockholder for the payment of any debt, and no transfer of any property of any such corporation by it or any officer, etc., nor any payment made, judgment suffered, etc., when the corporation is insolvent, with intent to give a preference, shall be valid, and that every director or officer of any corporation, who violates any provision of the section, shall be personally liable to the creditors and stockholders of the corporation "to the full extent of any loss they may respectively sustain by such violation," *Held*, that the personal liability imposed upon directors and officers was not for the corporate debts, but to indemnify creditors to the extent of any loss sustained through violation of the statute; the loss being presumptively for the amount for which an execution duly issued could not be satisfied in consequence of the disposition of property in violation of the statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1451; Dec. Dig. § 333.*]

2. CORPORATIONS (§ 326*)—LIABILITY OF DIRECTORS—CONSTRUCTION OF STATUTE.

The rule of strict construction applicable to highly penal statutes, such as one making corporate directors liable for the debts of the corporation, irrespective of its assets, is not applicable to the statute in question, which is remedial.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1443, 1460½, 1469, 1498; Dec. Dig. § 326.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CORPORATIONS (§ 348*) — LIABILITY OF DIRECTORS — JUDGMENT AGAINST CORPORATION — CONCLUSIVENESS AGAINST DIRECTORS.

A judgment against a corporation in favor of a creditor, in absence of fraud or collusion, conclusively establishes the creditor's status as such, and the amount of the claim, so as to be competent evidence, in an action against officers and directors to enforce their liability under the statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1491; Dec. Dig. § 348.*] .

4. CORPORATIONS (§ 340*) — LIABILITY OF OFFICERS — LIABILITY TO "CREDITORS."

The owners of personalty negligently injured by a corporation were "creditors" thereof, within Stock Corporation Law (Laws 1909, c. 61; Consol. Laws 1909, c. 59) § 66, imposing liability on corporate officers for transferring property of the corporation without consideration, when it was insolvent or had refused to pay its obligations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1473, 1474, 1476–1478; Dec. Dig. § 340.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

5. CORPORATIONS (§ 360*) — LIABILITY OF DIRECTORS — ACTIONS — ALLEGATIONS OF COMPLAINT.

The complaint in an action against corporate directors for wrongfully transferring corporate property while the corporation was insolvent, contrary to Stock Corporation Law (Laws 1909, c. 61; Consol. Laws 1909, c. 59) § 66, which alleged that defendant was a director and president of the company, and voted to authorize the transaction complained of, and signed the instruments necessary to effectuate it, sufficiently alleged that he violated the statute while acting as an officer or director.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1503, 1505; Dec. Dig. § 360.*]

6. CORPORATIONS (§ 333*) — INSOLVENCY — TRANSFERS — PREFERENCES — LIABILITY OF DIRECTORS — "SUCH" CORPORATION.

Stock Corporation Law (Laws 1909, c. 61; Consol. Laws 1909, c. 59) § 66, provides that no corporation, "which shall have refused to pay any of its notes or obligations" when due, shall make certain transfers of property, and that no transfer of any property of any "such" corporation when insolvent, with intent to prefer particular creditors, shall be valid, and further provides that its directors shall be liable for violating any provision of the section. *Held*, construing the section in view of its history, that the word "such" did not limit the operation of the section to corporations which had refused to pay their obligations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1451; Dec. Dig. § 333.*

For other definitions, see Words and Phrases, vol. 7, pp. 6750–6754; vol. 8, p. 7808.]

Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Appellate Term, First Department.

Action by Henry A. Cæsar and another, doing business under the firm name of H. A. Cæsar & Co., against Robert W. Bernard and others, impleaded with W. Cleveland Runyon. From a judgment of the Appellate Term (79 Misc. Rep. 224, 139 N. Y. Supp. 974), affirming an order of the Special Term of the City Court granting defendant Runyon's motion for judgment on the pleadings, plaintiffs appeal. Reversed and motion denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Henry L. Scheuerman, of New York City, for appellants.
W. Cleveland Runyon, of New York City, pro se.

LAUGHLIN, J.   The respondent interposed an answer, and then made the motion with a view to testing the sufficiency of the complaint. The sole question presented on the appeal is whether a cause of action is stated in the complaint; but its decision involves the consideration of several interesting points of law, on some of which we are without the assistance of precedents.

The action is based on section 66 of the Stock Corporation Law (chapter 61, Laws 1909; chapter 59, Consol. Laws), which renders the directors and officers of a corporation liable to its creditors in certain instances therein specified. The material provisions of the statute, which it becomes necessary, on the facts presented, to construe, are as follows:

"Sec. 66. Prohibited Transfers to Officers or Stockholders.—No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors,. shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property ·of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid.   *   *   *   Every person receiving by means of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees. No stockholder of any such corporation shall make any transfer or assignment of his stock therein to any person in contemplation of its insolvency. Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void.   *   *   *   No such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideration without notice. Every director or officer of a corporation who shall violate or be concerned in violating any provisions of this section, shall be personally liable to the creditors and stockholders of the corporation of which he shall be a director or an officer to the full extent of any loss they may respectively sustain by such violation."

The complaint contains three counts, each embracing the appropriate allegations with respect to the cause of action based on the respective judgments recovered against the corporation, as hereinafter stated. With this explanation, the material allegations of the three counts may be stated most concisely together.

It is alleged that on or about the 9th day of February, 1911, said Wyckoff Holding Company *negligently* injured certain personal property belonging to the plaintiffs, and like property owned by another copartnership firm, and by an individual, respectively; that actions were duly brought by the plaintiffs, and by the other owners, respectively, in the City Court against said corporation, and that the plaintiffs duly recovered a judgment on the 16th day of April, 1912, for their damages, and the respective owners of the other property

duly recovered a judgment for their damages on the 4th day of the same month; that executions were duly issued on said judgments and duly returned on April 26, ·1912, wholly unsatisfied, and that thereafter the other judgments were duly assigned to the plaintiffs. The facts constituting the causes of action against the corporation are not pleaded.

The first point made by counsel for respondent in support of the determination is that the· judgments against the corporation are neither conclusive nor prima facie evidence against the directors or officers, and that in an action to enforce this statutory liability the cause of action against the corporation must be pleaded and proved de novo. If so, it is manifest that the creditor who has been able to convince a court or jury on conflicting evidence in an action against the corporation might be defeated in an action against the directors or officers, or the recovery might not be the same, and would not include the costs and disbursements embraced in the judgment against the corporation.

[1] The Legislature manifestly intended to impose upon the directors and officers personal liability to creditors, not for the *debts* of the corporation, but *so far* as necessary to indemnify creditors "to the full extent of any loss" sustained through the violation of the statute, and to that extent *only*. If the corporation retained sufficient assets to discharge its obligations to creditors, the latter would sustain no *loss*. The *loss* would be presumptively, I think, the amount for which an execution duly issued could not be satisfied in consequence of the disposition of property in violation of the statute.

[2] The rule of strict construction applicable to highly penal statutes, such as one making directors personally liable for the *debts* of a corporation, without regard to its assets, or to whether or not the claim has been established against the corporation, for failing to file an annual report (Miller v. White, 50 N. Y. 137; Torbett v. Godwin, 62 Hun, 407, 17 N. Y. Supp. 46; Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038), should not be applied to this statute, which is remedial (McQueen v. New, 45 App. Div. 579, 61 N. Y. Supp. 464), and was designed to afford a remedy to creditors and stockholders for *losses* actually sustained by the acts of directors and officers of the corporation in their official capacity, or acts in which they participated while such directors or officers. The Legislature, by the section in question, extended the doctrine, administered by courts of chancery, that the assets of a corporation constitute a trust fund for the· benefit of its creditors. Darcy v. Brooklyn & N. Y. Ferry Co., 196 N. Y. 99, 89 N. E. 461, 26 L. R. A. (N. S.) 267, 134 Am. St. Rep. 827; Cullen v. Friedland, 152 App. Div. 124, 136 N. Y. Supp. 659. The liability created by this statute against directors and officers ·is for the *loss* sustained by creditors through wrongful acts of directors and officers, *by which the funds of the corporation have been depleted,* and instead of requiring that the action shall be brought by, or in the right of, the corporation to restore its funds, the Legislature gave a cause of action to the creditors and stockholders in their own right to recover the damages sustained.

[3] The case at bar is somewhat analogous to one by a creditor, in the right of the corporation, against a stockholder, to recover an unpaid subscription, in which case the judgment against the corporation establishes the status of the plaintiff as a creditor of the corporation. Stephens v. Fox, 83 N. Y. 313. The judgment conclusively, in the absence of fraud or collusion, establishes the status of the plaintiffs and their assignors as creditors of the corporation and the amount of their claim, and on principle it is competent evidence against the officers and directors to enforce this statutory liability. See Nicholas v. Lord, 193 N. Y. 388, 85 N. E. 1083; Carpenter v. Osborn, 102 N. Y. 552, 7 N. E. 823; Slee v. Bloom, 20 Johns. 669; Ashton v. City of Rochester, 133 N. Y. 187, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619; Moss v. Oakley, 2 Hill, 265.

[4] We do not deem it necessary either to set forth or to analyze the allegations of the complaint charging conveyances, assignments, and transfers of property of the corporation, when it was insolvent and its insolvency was imminent, with the intent of giving particular creditors a preference. We have examined those allegations in the light of the arguments made to the effect that the facts set forth are insufficient to show any violation of the statute in those regards, and we find those criticisms of the complaint without merit. The plaintiffs and their assignors, although not judgment creditors at the times when the property of the corporation is alleged to have been thus conveyed and assigned, were creditors within the contemplation of the statute, for they were in fact tort creditors. Ginsberg v. Automobile Coaching Co., 151 App. Div. 627, 136 N. Y. Supp. 354; Kain v. Larkin, 4 App. Div. 209, 38 N. Y. Supp. 546.

[5] The respondent on this appeal was both a director and president of the company, and in his official capacity voted to authorize the transactions of which complaint is made, and as president signed and executed the indentures necessary to carry the same into effect. It is therefore sufficiently alleged that as an officer or director he violated or was concerned in the violation of the statute.

[6] It is not alleged that the corporation had refused to pay any of its notes or other obligations when due; and thus arises the question, which has been before the courts and discussed so often, but never authoritatively decided by the Court of Appeals, as to whether, by the use of the word "such" in the second sentence of the section, the operation of the entire section is confined to corporations which have defaulted in meeting their notes or other obligations when due. The learned counsel for the respondent argues with much plausibility and force that this statute is neither ungrammatical nor ambiguous, and that no basis is found in its present provisions, which have remained in force upwards of 20 years, for adjudicating that the word "such" was inserted through mistake or inadvertence, and may therefore be disregarded.

If this were a new enactment, it would be difficult to meet and overcome the argument that this adjective, which so often has been given controlling weight in the construction of statutes, should not be held to limit the statute to corporations defaulting on their obliga-

tions. I am of opinion, however, that the weight of authority with respect to this particular statute, and those from which it has been derived, is in favor of a construction eliminating the word "such," on the theory of necessity, in order to give effect to the intention of the Legislature, found in the history of the legislation from which this section was derived. This section had its origin in part in section 6 of chapter 325 of the Laws of 1825, entitled "An act to prevent fraudulent bankruptcies by incorporated companies, to facilitate proceedings against them, and for other purposes," which provided as follows:

"Whenever any incorporated company shall have refused the payment of any of its notes or other evidences of debt, in specie or lawful money of the United States, it shall not be lawful for such company, or any of its officers, to assign or transfer any of the property or choses in action of such company, to any officer or stockholder of such company, directly or indirectly, for the payment of any debt; and it shall not be lawful to make any transfer or assignment in contemplation of the insolvency of such company, to any person or persons whatever; and every such transfer and assignment to such officer, stockholder or other person, or in trust for them or for their benefit, shall be utterly void."

With the exception of a period of about two years—1882 to 1884—these provisions remained upon the statute books without material change, and applicable to *all* corporations, until the enactment of chapter 564 of the Laws of 1890, known as the Stock Corporation Law (see section 4, title 4, chapter 18, part 1, R. S.; section 1, subd. 39, chapter 402, Laws 1882, repealing them; and chapter 434, Laws 1884, re-enacting them); and it was repeatedly adjudged that the words "such company" meant, not one which had defaulted in paying its notes or other evidences of debt, but any incorporated company whatsoever (Cole v. Millerton Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Coats v. Donnell, 94 N. Y. 168; Varnum v. Hart, 119 N. Y. 101, 23 N. E. 183; Sibell v. Remsen, 33 N. Y. 95; Harris v. Thompson, 15 Barb. 62). These provisions were re-enacted in a somewhat different form as section 48 of the Stock Corporation Law, as follows:

"Sec. 48. Certain Transfers of Stock and Property Prohibited.—No corporation which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall assign any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt; and no officer, director or stockholder thereof shall make any transfer or assignment of its property, or of any stock therein, to any person in contemplation of its insolvency; and every such transfer or assignment to such officer, director or other person, or in trust for them or for their benefit, shall be void."

Moneyed corporations were, at that time, exempted from the operation of the statute. Section 1, c. 564, Laws 1890. Notwithstanding these changes in the phraseology and punctuation of the provisions, they continued to be construed as relating, not merely to corporations defaulting in their obligations, but to all other than moneyed corporations. Munson v. Genesee Iron & Brass Works, 37 App. Div. 203, 56 N. Y. Supp. 139. The next change came with the general revision of the Stock Corporation Law by chapter 688 of the Laws

of 1892, and of the Banking Law by the next chapter of laws enacted (chapter 689, Laws 1892), which took effect the same day, and was enacted as part of the same plan of revision. The revision of 1892 left section 48 of the Stock Corporation Law in *article 2* of the chapter in precisely the same form it bears now as section 66, hereinbefore quoted.

I am convinced that the learned counsel for the appellants is right in his contention that the Legislature at that time intended to restore the provisions in question to their *former general* application, and extended the application of that part thereof prohibiting *transfers*, which had theretofore been confined to *transfers* in contemplation of insolvency, to *making payments, suffering judgments, creating liens, and giving security,* thus making the prohibition as broad as that contained in section 187 of the Banking Law of 1882, which was not limited to banking corporations defaulting in paying their obligations, but clearly applied to all corporations of that class. It was evidently intended to transfer those and other provisions from the Banking Law to the Stock Corporation Law, and to re-enact the Banking Law in revised form, omitting those provisions therefrom, and by re-enacting them in general form in the Stock Corporation Law to continue them as applicable to banking corporations. The only part of the Stock Corporation Law then rendered and left inapplicable to moneyed corporations was article 1 (see section 1, c. 688, Laws 1892); and the new provision imposing this personal liability on officers and directors, then added to section 48 of the Stock Corporation Law, was evidently taken from section 188 of the former Banking Law (chapter 409, Laws of 1882), which provided that the directors and officers of banking corporations should "be liable personally to the creditors and stockholders respectively * * * to the full extent of any loss they may respectively sustain from such violation."

In the Banking Law of 1892, enacted, as has been seen, concurrently with the Stock Corporation Law, the provisions prohibiting preferential transfers and imposing personal liability upon directors and officers were wholly omitted. This clearly indicates that the legislative intent was to embody such prohibitions and liability in the Stock Corporation Law, and render them applicable to all stock corporations. It thus appears that those provisions of the present statute, which were taken from the former Banking Law, were not, when in the Banking Law, limited to corporations which had defaulted in meeting their obligations for the payment of money, and that it had been authoritatively adjudicated that those provisions which had their origin in the act of 1825 were not so limited.

The mere consolidation and revision of statutes is no indication of legislative intent to change the law. Davis v. Davis, 75 N. Y. 221. Manifestly, the purpose of the Legislature in enacting these statutes was to prevent those occupying confidential and fiduciary relations toward corporations from profiting directly or indirectly by information thereby acquired, and to prevent unjust discrimination and preferences among creditors of insolvent corporations, or those

bordering on insolvency (see Throop v. Hatch Lithograph Co., 58 Hun, 149, 11 N. Y. Supp. 532, affirmed 125 N. Y. 530, 26 N. E. 742; Varnum v. Hart, supra); and therefore the object of the statute precludes an inference of legislative intent to narrow and limit its scope by the consolidation and revision.

When necessary to give effect to the legislative intent, gleaned from the history of legislation, and the evil which the statute was designed to prohibit or remedy, or other object sought to be accomplished, words may be eliminated or supplied. Matter of Deuel, 116 App. Div. 512, 101 N. Y. Supp. 1037; People ex rel. Gress v. Hilliard, 85 App. Div. 507, 83 N. Y. Supp. 204, affirmed 176 N. Y. 604, 68 N. E. 1122; Matter of Gihon, 48 App. Div. 598, 62 N. Y. Supp. 426; Town of Pelham v. Shinn, 129 App. Div. 20, 113 N. Y. Supp. 98; Stone v. Corporation of Yeovil, L. R. 1 C. P. D. 691; May v. Bermel, 20 App. Div. 53, 46 N. Y. Supp. 622. This rule is especially applicable in construing a statute which has been codified after having undergone many changes. Matter of Gihon, supra.

The Legislature is presumed, in re-enacting statutes, to be familiar with their construction by the courts (Pouch v. Prudential Ins. Co., 204 N. Y. 281, 97 N. E. 731), and since it re-enacted this without such change in phraseology as to indicate an intent to change it so that the former judicial construction would be inapplicable, it is deemed to have adopted the judicial construction. Matter of Baird, 126 App. Div. 439, 110 N. Y. Supp. 708; Pulitzer v. City of N. Y., 48 App. Div. 6, 62 N. Y. Supp. 587.

I am therefore of opinion that this section of the Stock Corporation Law is *not* limited to corporations which have defaulted in the payment of notes or other obligations, and that is the construction placed upon it by the majority of this court in O'Brien v. East River Bridge Co., 36 App. Div. 17, 55 N. Y. Supp. 206, which was reversed on another point, with an intimation, however, that the court questioned the correctness of such construction. O'Brien v. East River Bridge Co., 161 N. Y. 550, 56 N. E. 74, 48 L. R. A. 122. The attention of the Court of Appeals does not appear to have been drawn on that appeal to its unanimous opinion in Cole v. Millerton Iron Co., supra, construing the former statute prohibiting transfers by corporations in contemplation of insolvency, as not limited to those which had defaulted in meeting their obligations.

The determination of the Appellate Term, and the order of the Special Term of the City Court, should therefore be reversed, with costs, and motion denied, with costs.

McLAUGHLIN and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. I dissent from the reversal of this judgment. The action is brought to enforce a liability imposed by section 66 of the Stock Corporation Law (chapter 61, Consol. Laws 1909), and it is only by virtue of this provision of law that the defendants can be held responsible in damages by reason of the transfer of the property of a corporation of which they were directors or officers. This sec-

tion 66 of the Stock Corporation Law, as I read it, refers solely to a corporation "which shall have refused to pay any of its notes or other obligations when due." There is not one word in this section which refers to any other corporation, and it seems to me clear that for the courts to make it apply to a corporation that has not failed "to pay any of its notes or other obligations when due," is purely judicial legislation, under an assumed intention of the Legislature, which is without any reason to support it, and which, as I view it, is a pure usurpation of legislative power by the courts.

Prior to the enactment of the Stock Corporation Law there was a statute which had been in force for many years (section 6, c. 325, Laws 1825), which imposed upon officers or directors of a corporation making certain prohibited transfers a liability. But the Legislature, when enacting the Stock Corporation Law, imposed a more extensive liability, and it cannot be said that it did not intend to do what it said, but intended to extend the liability there imposed to all other corporations, although the language of the statute confines it to a corporation "which shall have refused to pay any of its notes or other obligations when due." Although the construction, which was given by the courts to the act of 1825, was quite justified by the language used in that statute, it seems to me clear that the Legislature, when it repealed that act and enacted the Stock Corporation Law, clearly intended to change the rule that had before been in force, so as to confine this liability to the officers or directors of a corporation "which shall have refused to pay any of its notes or other obligations when due," thus giving the statute the meaning which its language clearly indicated. The intent of the Legislature was to prevent the transfer of any of its property by its officers or directors, when a corporation "shall have refused to pay any of its notes or other obligations when due," or to prohibit any "such" corporation from making any transfer of property, when insolvent or when its insolvency is imminent, with the intent of giving a preference to any creditor over the other creditors of the corporation.

I expressed my views on this question in O'Brien v. East River Bridge Co., 36 App. Div. 17, 55 N. Y. Supp. 206, and those views were inferentially approved on appeal. 161 N. Y. 539, 56 N. E. 74, 48 L. R. A. 122. This court has expressly given the same meaning to the word "such" in section 33 of the Stock Corporation Law, in Wadsworth v. Equitable Trust Co., 153 App. Div. 737, 138 N. Y. Supp. 842, and the Supreme Court of the United States has also put that meaning on such a statute in United States v. Gooding, 12 Wheat, 460, 6 L. Ed. 693, where Story, J., said:

"The first point turns upon the interpretation of the words 'such ship or vessel,' in each of these sections. To what do they refer? The only ship or vessel spoken of in either section is such as have been built, fitted out, etc., in some port or place of the United States. 'Such ship or vessel' must therefore refer to a ship or vessel so built, fitted out, etc., as its antecedent, or the relative 'such' can have no meaning at all. The word is sensible in the place where it occurs, and it is the duty of the court, when it can, to give effect to every word in every enactment, if it can be done, without violating the obvious intention of the Legislature. This is a penal act, and is to be construed strictly; that is, with no intendment or extension beyond the import of the words used. There is no certainty that the Legislature meant

to prohibit the sailing of any vessel * * * which had not been built, fitted out, etc., within the jurisdiction of the United States. * * * But it is sufficient to say that the word 'such' has an appropriate sense, and can be reasonably referred only to the ship or vessel previously spoken of; and such ship or vessel is not merely one built, fitted out, etc., but one built, fitted out, etc., in a port or place within the United States. The whole description must be taken together. If we were to adopt any other construction, we should read the words as if 'such' were struck out, and the clause stood, 'any ship or vessel.' Such a course would not be defensible in construing a penal statute."

I also dissent from the conclusion in the prevailing opinion that this statute is not a penal statute, but is a remedial one. So far as it prohibits the transfer by a corporation of its assets, that conclusion may be strictly correct; but so far as it imposes upon the directors or officers of a corporation, who make a transfer prohibited by the statute in question, a liability for any injury that is sustained by a creditor in consequence of the violation of the provision contained in that section, it seems to me that it is highly penal, making the officers and directors, of the corporation liable, not for their own debts, but for the debts of the corporation, in consequence of an act which is prohibited by the statute. A liability imposed by such a statute is never extended by implication or construction.

I therefore dissent from the reversal of this judgment.

DOWLING, J., concurs.