GEORGE HEYEN, V. STATE OF NEBRASKA.

FILED SEPTEMBER 30, 1926.   No. 25161.

1. **Criminal Law:** ACCESSORY AFTER THE FACT. Under the Nebraska statute "An accessory after the fact is a person who, after full knowledge that a felony has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime." Comp. St. 1922, sec. 9542.

2. ————: ACCESSORY AFTER THE FACT: PROOF OF PRINCIPAL

CRIME. In a prosecution for being an accessory after the fact, the commission of the principal crime and the guilt of one who committed it may be shown by his conviction, sentence and confinement in the penitentiary, though two other persons not yet convicted were equally guilty of the same criminal offense.

3. ———: ———: ADMISSIBILITY OF RECORD. A mere error in imposing upon a convict an indeterminate sentence instead of one for a definite period does not make the record inadmissible for the purpose of showing his guilt in a prosecution against an accessory after the fact.

4. ———: ———: ———. A clerk's judicial record showing a conviction for a felony, though not yet signed by the presiding judge, is admissible to prove the principal offense in a subsequent prosecution against an accessory after the fact.

5. ———: ———: INSTRUCTIONS: HARMLESS ERROR. In a criminal prosecution, inconsistency in the instructions is not necessarily a ground for the reversal of a conviction, where the record does not show prejudice to defendant.

6. ———: ———. A person knowingly harboring and protecting criminals immediately after they have robbed a bank cannot escape trial, conviction and punishment as an accessory after the fact merely because they had not been formally charged in court and found guilty of the robbery at the time they were harbored and protected, the expression "charged with or found guilty," as used in the accessory statute, not being thus limited as to time. Comp. St. 1922, sec. 9542.

7. ———: ———: SUFFICIENCY OF EVIDENCE. In a prosecution against an accessory after the fact for harboring and protecting bank robbers, "full knowledge" that they were guilty of the robbery is essential to a conviction, and the evidence outlined in the opinion *held* sufficient in that respect.

8. ———. Where the evidence on a material issue in a criminal prosecution is conflicting but sufficient to sustain a conviction beyond a reasonable doubt, the question is one for the jury.

9. Robbery: APPEAL: RULINGS ON EVIDENCE. Under an information charging defendant as an accessory after the fact for harboring and protecting robbers, a ruling which prevented him from telling the jury in answer to a question why he did not run to a police officer and tell all about it, *held* not erroneous or prejudicial.

10. Witnesses. The admission of offered evidence to contradict a witness is largely in the discretion of the trial court.

11. ———. Evidence which directly tends to disprove the facts to which a witness has testified is admissible in contradiction.

12. Evidence. A newspaper, properly addressed and mailed, is presumed, as a matter of evidence, to have reached the addressee in the usual course of the mails.

13. Criminal Law: ADMISSION OF EVIDENCE. In a criminal prosecution, the admission of evidence not prejudicial to defendant is not ground for setting aside a conviction.

14. ———: ———. In a prosecution against an accessory after the fact for harboring and protecting robbers, testimony by and records of the circulation manager of a daily newspaper tending to prove that defendant received a copy of the newspaper during the time of such harboring and protecting, *held* admissible to rebut testimony by him to the contrary.

15. Sentence. A sentence of nine months in the county jail and a fine of $300 for harboring and protecting robbers *held* not excessive.

ERROR to the district court for Gage county: WILLIAM J. MOSS, JUDGE. *Affirmed.*

*Hazlett, Jack & Laughlin,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

ROSE, J.

In a prosecution by the state in the district court for Gage county, George Heyen, hereinafter called "defendant," was convicted of violating the statute which provides:

"An accessory after the fact is a person who, after full knowledge that a felony has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime. Any person found guilty of being an accessory after the fact shall be imprisoned in the jail of the county for any term not exceeding two years, and fined in a sum not exceeding five-hundred dollars, to be regulated by the circumstances of the case and the enormity of the crime." Comp. St. 1922, sec. 9542.

April 6, 1925, Carl Erickson, Dewaine Brennan and Johnnie Brown entered the Farmers State Bank of Cortland in Gage county with arms and threats, put the cashier and the assistant cashier in bodily fear with the intention of committing robbery and feloniously took and carried away $1,845 belonging to the bank. They violated the following provisions of statute:

"That whoever enters any building occupied as a bank, depository or trust company and by violence or by putting in, fear any person or persons in charge of or connected with said bank, depository or trust company with intent to take, steal or carry away any of the money, goods, chattels or other property belonging to or in the care, custody or control of said bank, depository or trust company shall be deemed guilty of a felony and on conviction thereof shall be confined in the state penitentiary not less than ten nor more than twenty-five years." Laws 1921, ch. 301, sec. 1; Comp. St. 1922, sec. 9622.

"Whoever forcibly, and by violence, or by putting in fear, takes from the person of another any money or personal property, of any value whatever, with the intent to rob or steal, shall be deemed guilty of robbery, and upon conviction thereof, shall be imprisoned in the penitentiary not more than fifteen nor less than three years." Comp. St. 1922, sec. 9557.

During the afternoon of April 6, 1925, following the robbery, the felonious trio appeared in a stolen automobile at the home of defendant, a farm in Gage county, put the car under cover in a shed and concealed themselves in the barn and house or elsewhere on the premises. Brennan was there at intervals until April 10, 1925, and Erickson and Brown made it their hiding place most of the time until April 11, 1925. They were not apprehended there. In a prosecution by the state in the district court for Gage county, Erickson pleaded guilty to the charge that he had feloniously entered the Farmers State Bank of Cortland April 6, 1925, and for that offense he was sentenced to serve in the penitentiary a term of 10 to 25 years.

In the present case defendant was tried and convicted in the district court for Gage county under the charge that he had been an accessory after the fact to the felonious entry of the bank April 6, 1925, having harbored and protected Erickson with full knowledge of his guilt, contrary to the accessory statute quoted. As an accessory after the fact defendant was sentenced November 18, 1925, to serve in the jail of Gage county a term of nine months and to pay a fine of $300. As plaintiff in error he presents for review the record of his conviction.

It is first argued that the trial and conviction were premature and void because defendant was accused and sentenced as an accessory after the fact before the principal malefactors were convicted of feloniously entering the bank to rob it. In this connection it is contended that Erickson was never legally convicted within the meaning of the accessory statute. As defendant views the record Erickson committed acts of violence for which he was not punishable under the indeterminate sentence of 10 to 25 years imposed by the district court, the deduction being that a valid conviction prior to the sentencing of the accessory was not disclosed, though essential to the state's case. The point does not seem to be well taken. The evidence adduced on behalf of each party to the present prosecution against defendant shows conclusively that the principal felony was committed as charged in the information against Erickson. The latter was answerable for his crime, though Brown and Brennan had not yet been brought to justice. In the district court for Gage county Erickson was duly charged with entering the bank feloniously with intent to rob it. He pleaded guilty and was sentenced and committed to the penitentiary. If an indeterminate sentence was erroneously imposed upon him instead of one for an act of violence, the proceeding in that respect was merely erroneous, not void. The error, if any, might have been reviewed by Erickson, but it was not available to defendant in the subsequent prosecution against the latter as an accessory after the fact—a different offense. The correct rules of law seem to be that, "To

prove the previous conviction of the principal, so as to au-
thorize the trial and conviction of the accessory, the record
of the principal's conviction is admissible," and "The fact
that there are in the record errors which would have been
available to the principal is immaterial." 16 C. J. 143,
sec. 154.

It is true, however, as pointed out by defendant, that there
is nothing in the evidence to show that two of the robbers,
Brown and Brennan, were convicted of the principal of-
fense before the accessory was sentenced, but in that par-
ticular the previous conviction of Erickson alone was suf-
ficient, and that fact was properly shown by authentic
copies of the judicial record itself. The record of the con-
viction was admissible, though open to the objection that
it was not signed by the presiding judge, the entries made
by the clerk of the district court showing that Erickson
was legally charged, that he pleaded guilty and that he
was sentenced and imprisoned. Independently of the court
record, however, the guilt of Erickson as a principal was
definitely established by oral evidence not disputed or ques-
tioned. The felony committed by the principal was shown
to have been complete. If defendant harbored or pro-
tected Erickson within the meaning of the accessory statute,
the former was no less culpable, or amenable to law, merely
because at the same time he also harbored and protected
two other criminals equally guilty.

In connection with this feature of the review, there is
further complaint that the presiding judge, after ruling
that it was necessary only to try defendant as accessory
to the principal Erickson, submitted to the jury the issue
as to defendant having been accessory to all three of the
robbers. In the information accusing defendant as acces-
sory after the fact there were two counts. The first charged
that the three principals feloniously entered the bank with
intent to rob it and that defendant with full knowledge
thereof, harbored and protected them. The second count
charged the robbery itself and the harboring of the robbers.
Before trial there was an election by the prosecution to

stand on the first count. One form of verdict submitted to the jury permitted them to find defendant guilty as charged in the information. The first instruction to the jury contained the substance of the first count and the statement that the issues were formed by the charge in the information and the plea of not guilty. The jury found defendant guilty as charged in the information. Defendant challenges the instructions and the verdict on the ground that the court erred in permitting the jury to find defendant guilty as accessory to all three of the principals, though two of them had not been charged with or convicted of the principal offense. In these particulars the record does not affirmatively disclose error prejudicial to defendant. Considering the argument from defendant's standpoint, the trial court required, and the jury found, more than was necessary to a conviction. If the instructions as a whole required, and the jury found, that defendant was accessory to all three principals, Erickson, who had been accused and convicted, was included. Defendant himself proved beyond doubt or question facts showing conclusively that the felonious trio were each and all guilty of both unlawfully entering and robbing the bank and that defendant had harbored all of them, the substance of his defense being that he had no knowledge of those facts during the time the three principal offenders were on his premises. If the jury, under the instructions, in addition to the facts necessary to a conviction, found what defendant himself proved without doubt or question, the criticism based on prejudice does not, under the circumstances, seem to be well founded. It does not appear, however, that the instructions permitted the jury to find as a fact that defendant harbored and protected Brennan and Brown. Some of the instructions, referring directly to the first count of the information, make it clear that the issue as to harboring and protecting was confined to Erickson as principal. The assignments of error on this branch of the case are overruled.

The conviction is also assailed as invalid because Erickson, while at the home of defendant, had not then been

"charged with or found guilty of the crime," within the meaning of the accessory act. Comp. St. 1922, sec. 9542. The statutory definition is: "An accessory after the fact is a person who, after full knowledge that a felony has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime." Defendant was accused under the latter clause. It is contended that the words "charged with or found guilty" apply to the time of the harboring and protecting of the principal offender and that consequently defendant did not violate the law, since there was then no formal charge pending against Erickson and no finding that he was guilty. This seems to be the view taken by the supreme court of California in construing a similar statute. *People v. Garnett,* 129 Cal. 364. That construction, however, appears to be at variance with the obvious intention and purpose of the legislature. It might permit an accessory to conceal the identity of the principal, delay the making of a formal charge against him and avoid accountability for the misdeeds of the accessory on the plea that the principal had not been brought to justice. The legislature did not intend to make the committing of the crime its own vindication. When the intention of the legislature and the purpose of the statute, as disclosed by the language used, are considered, the words "charged with or found guilty of the crime" may mean legal proceedings subsequent to the harboring and protecting of the criminal. Law-abiding citizens generally revolt at high-handed crimes and the screening of criminals from justice. The necessity of protecting society from criminal violence and from harbored criminals resulted in common and statutory law condemning accessories. The legislature meant to enact an effective remedy and used language to that end. The statute recalls a passage from Emerson:

"The beautiful laws and substances of the world prosecute and whip the traitor. He finds that things are arranged for truth and benefit, but there is no den in the world to hide a rogue. Commit a crime, and the world

is made of glass.  Commit a crime, and it seems as if a coat of snow fell on the ground, such as reveals in the woods the track of every partridge and fox and squirrel and mole.  You cannot recall the spoken word, you cannot wipe out the foot-track, you cannot draw up the ladder, so as to leave no inlet or clew.  Some damning circumstance always transpires.  The laws and substances of nature—water, snow, wind, gravitation—become penalties to the thief."

The robbers went from the Cortland bank to the home of defendant, where they remained several days, temporarily escaping capture.  If defendant harbored and protected them, knowing they had been guilty of robbery, he committed an offense against which the statute was directed and the wording of the entire act conveys that meaning.  The supreme court of Arkansas, construing the words, "charged with or found guilty of the crime," as they were used in a similar statute, held that a pending indictment at the time of the harboring and protecting of the principal offender was not a prerequisite to the conviction of the accessory after the fact, citing, but declining to follow, the contrary ruling of the supreme court of California.  *State v. Jones,* 91 Ark. 5.  The decision of the Arkansas court seems to be based on the better grounds.

Other assignments of error challenge the sufficiency of the evidence to sustain a finding that defendant, while the robbers were at his home, had "full knowledge" that Erickson robbed the bank at Cortland.  "Full knowledge" was of course essential to a conviction of the accessory, because the statute makes it so.  Comp. St. 1922, sec. 9542.  If there was evidence sufficient to show beyond a reasonable doubt that defendant had full knowledge, the issue was a question for the jury.  He testified that he knew nothing of the robbery until long after the robbers left his place.  In this he was corroborated by his wife and Brown.  His testimony showed in addition, however, that Brown, before the robbery, obtained from him permission to return with his two companions, where they would not be exposed to

the observation of others, while engaged in transporting booze to Wymore. If the jury, in considering all the evidence, should, upon sufficient evidence, disbelieve the story that such permission was given only in the belief that it was for the purpose of harboring and protecting booze-runners instead of robbers, many of the circumstances showing the harboring and protecting would apply to knowledge of the robbery. Guilty knowledge may be proved by circumstances. *Bashinski v. State,* 123 Ga. 508. There is a reasonable view of the case in which circumstances disclosed tend to prove the guilt of the accessory.

There is proof in addition to circumstances. A police officer stated in substance, on the witness-stand, that defendant, sometime after the robbery, admitted or confessed that the robbers were permitted to remain at his home after he had been told by one of them that "they," referring to the three, had robbed the Cortland bank. The testimony of another police officer was of the same import. This testimony, if believed, was sufficient, when considered with corroborating facts and circumstances, to prove the knowledge essential to a conviction. There was a direct conflict between interested witnesses on opposite sides. The issue was submitted to the jury and their verdict is supported by sufficient evidence.

Was there prejudicial error in the sustaining of an objection to the questioning of defendant in this manner? "Just tell the jury why you didn't run here to the sheriff of this county or to Sheriff Condit at Lincoln or the chief of police and tell all about it." The offer of proof indicated a purpose to show that defendant and his wife were excited and didn't know what to do and in their ignorance decided to remain silent and see what would happen. Excitement and ignorance were not of themselves defenses. As the record stands, the question and offer of proof do not seem to be in a proper form to elicit evidence of an issuable fact. Though the statute made concealment from "the magistrate" unlawful, there was no accusation or trial under that provision. The officers mentioned in the question

were not "magistrates" within the meaning of the act.    As explained by the proof, the inquiry did not call for testimony that defendant was influenced by danger, fear, threats, violence or any other form of duress.    The contrary was shown by the record.    Knowing that the trio were seeking seclusion, defendant invited them to remain, having had a previous acquaintance with two of them.    He so testified. There was also proof in defendant's behalf to the effect that the guests were unwilling to accept offered hospitality without any consideration and that the wife of defendant received $40 as compensation.    In the form the question was asked it does not seem, therefore, that the ruling of the trial court violated any law of evidence or otherwise prejudiced defendant.

Another question is presented by the assignment that the trial court erred in admitting evidence tending to show that defendant received April 9, 1925, before the robbers left his premises, a copy of the Lincoln Star, a daily newspaper. The question arose in the following manner:    Defendant, among other things, testified in effect in his own behalf that he did not receive a copy of the Daily Star between April 2, 1925, and April 11, 1925, while the robbers were his guests.    In rebuttal the state called as witness the circulation manager of the Daily Star, who was permitted to identify as evidence original records of circulation, which, in connection with oral testimony, tended to show that in the regular course of circulation a copy of the issue of April 8, 1925, was mailed the same day and delivered to defendant in due course of mails April 9, 1925.    One of the objections to this evidence is that it was hearsay as to defendant.    There is a well-recognized rule of evidence that a newspaper account is merely hearsay evidence of facts stated therein, and is not generally admissible in evidence to prove such facts.    22 C. J. 929, sec. 1137.    A newspaper, however, may be admissible to impute to a person who reads it knowledge of a published fact, but neither of these purposes or rules is the test of admissibility in this particular instance.    Evidence that defendant received a copy

of the Daily Star April 9, 1925, would tend to rebut or con-
tradict his testimony to the contrary. The admission of
offered evidence to contradict a witness is largely in the
discretion of the trial court. 40 Cyc. 2782. "Evidence which
directly tends to disprove the facts to which a witness has
testified is admissible in contradiction." 40 Cyc. 2777. The
objection as to the testimony described was properly over-
ruled under the following principle of law: A newspaper,
properly addressed and mailed, is presumed, as a matter
of evidence, to have reached the addressee in the usual
course of the mails, common experience indicating the
regularity and certainty with which mail is carried and
delivered in the exercise of governmental functions. *City
of Omaha v. Yancey,* 91 Neb. 261; 16 C. J. 542, sec. 1032;
22 C. J. 96, sec. 36. The objections, however, go further.
Defendant testified also that he was not a subscriber to the
Daily Star between April 2, 1925, and April 11, 1925. The
records and testimony of the circulation manager tended
to show in addition to the delivery of a copy to defendant
April 9, 1925, that, through the Daily Star's agent at Filley,
a subscription accompanied by $3.60 in payment was re-
ceived April 6, 1925, and that in consequence the name of
defendant was entered on the subscription list. It is argued
that this evidence was hearsay as to defendant because the
publisher's agent was not called as a witness to connect
defendant with those transactions. This evidence does not
appear to be prejudicial to defendant in view of properly
admitted testimony that, without regard to questions of
subscription and payment, he received the newspaper in due
course of mail.

It is finally contended that imprisonment nine months in
the county jail and a fine of $300 are too severe. The
maximum penalties are two years in the county jail and a
fine of $500. Comp. St. 1922, sec. 9542. The jury recom-
mended clemency, but in view of the verdict of guilty and
the merciful sentence imposed there does not seem to be
a sufficient reason for interference with the discretion of
the trial court.

Error prejudicial to defendant has not been found in the record.

AFFIRMED.

Note—See Criminal Law, 16 C. J. pp. 137, 145, 542, 931; 17 C. J. pp. 317, 333, 343.