[No. 7752]

## SARKISIAN v. THE PEOPLE.

1.  CRIMINAL LAW—*Evidence—Competency*—In a prosecution under Rev. Stat. sec. 1646, for using an, instrument for the purpose of procuring an abortion, it is error to permit the woman to testify that before she resorted to defendant, a third person had told her that the accused was a doctor who would help her out of her trouble. Gabbert J. dissenting.

A card upon which defendant's name was written by such third person and delivered to the woman, was held admissible, in explanation of how the woman came to go to defendant's office. So a request left by the woman with defendant's wife to have him call her up.

2.  ——*Instructions*—An instruction which, without calling the attention of the jury to the evidence, informs them that they are "not at

liberty to disbelieve as jurors, if they believe as men," is error.  Garrigues, Hill and Scott, JJ.

3.  ——*Information*—An information under Rev. Stat. sec. 1646, for using an instrument to procure an abortion, which contains no allegation as to the manner of using the instrument, and no charge that it was used upon any person, but only that it was used with intent to procure the abortion of a woman named, is bad.  Garrigues, Hill and Scott, JJ.

*Error to the Denver District Court.*—Hon. HARRY C. RIDDLE, Judge.

Mr. O. N. HILTON, Mr. E. N. BURDICK, and Mr. BEN B. LASKA for plaintiff in error.

Hon. BENJAMIN GRIFFITH, Attorney General, Mr. CHARLES O'CONNOR, First Assistant Attorney General, for the People.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1.  Defendant was convicted of violating the statute which, so far as applicable to this case, provides: That every person who shall use or attempt to use any instrument with the intention to procure a miscarriage of any woman then being with child shall be punished, etc., M. A. S., Rev. Ed. 1912, sec. 1775.  The information, omitting formal parts, charges: "That T. Sarkisian on, to-wit, the 28th day of October, A. D. 1911, at the city and county of Denver, state of Colorado, did then and there unlawfully, feloniously and maliciously use and cause to be used a certain instrument and instruments with the intention to procure a miscarriage of one Floy Ripley, the said Floy Ripley being then and there a woman then and there with child, etc."

2.  On the trial, Floy Ripley was permitted, over the objection of defendant, to testify for the prosecution that she asked a certain druggist in Denver if he knew any

doctor who would help her out of her trouble, and the druggist replied that he knew all doctors would not do such things (produce abortions), but that he would give her the name of one who would, and then wrote the name of the defendant upon a card which he gave her. There is no evidence whatever, in any way connecting the defendant with the druggist, or tending to show that he had any authority to represent the defendant. What the druggist told the witness about defendant producing abortions was purely hearsay, and its unfairness and danger to the defendant on a criminal trial of this character is so apparent that it is impossible to say what effect it may have on the minds of the jurors. When one is on trial charged with a crime of this nature, to admit as evidence in chief for the prosecution, statements of another that he knew defendant did such criminal acts, is error. Such statements are hearsay, and inadmissible. The prosecution would not have been permitted to show by the druggist as a part of the People's case in chief that he knew defendant was engaged in the business of producing abortions. It was not the introduction of the card in evidence upon which defendant's name was written, that was erroneous; that was admissible as a fact in explanation of how Floy Ripley came to go to defendant's office; but what the druggist said about defendant being in the business of producing abortions. Also the testimony that she left a request with defendant's wife to have him call her up on his return was not hearsay; it was admissible as evidence of a fact.

The judgment will be reversed.

While the majority of the court are of the opinion the case should be reversed for the error above indicated, the writer believes other prejudicial errors were committed on the trial.

The court instructed the jury, omitting the italicized

words: "You are not at liberty to disbelieve as jurors if *'from the evidence'* you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered." I think this instruction with the italicized portion omitted is bad, though in view of what is said in *McQueary v. People*, 48 Colo. 214, 110 Pac. 210, 2 Ann. Cas. 560, it may not be reversible error where the jury are told in some other appropriate instruction that they are to find from the evidence. The reason I think it bad is, it tells each juror he is not at liberty to disbelieve as a juror if he believes as a man. The guilt of an accused in a criminal trial must be found from the evidence produced in court. A juror might, as a man and citizen, from sources wholly outside, believe defendant guilty, and to impress upon him, if he believes as a man the accused is guilty, that it is his duty to convict, is erroneous. The instruction is attacked, however, including the clause *"if from the evidence."* This instruction, "If from the evidence you believe as men," etc., probably had its origin in the *Spies* case, where it was upheld by the supreme court of Illinois, and has since been approved by many eminent courts. In Blashfield on Instructions, sec. 304, the author, in speaking of this kind of an instruction, says: It has been held proper to give such an instruction where it is used in connection with "the evidence." In *Robinson v. State*, 18 Wyo. 217, 106 Pac. 24, the instruction was given with the phrase "if from the evidence," omitted, as in this case, and the supreme court of that state declined to uphold the instruction given in that form. I believe the instruction proper when correctly given; but I do not approve the form in which it was given in this case. Administering an oath creates no mental barrier or distinction between jurors and other men. They are still men, and there is no reason why a juror should doubt simply because he has taken an oath, if as a man and citizen the

evidence in the case satisfies him beyond a reasonable doubt of the defendant's guilt. A juror's oath cannot change the operation of his mind, by which, as a man, he arrives at a belief from the evidence. The human mind is a reasoning machine, and the administration of an oath does not change its operation. The oath constitutes no factor in the mental process of arriving at a verdict based upon the evidence. It does not enlarge or restrict ordinary mental operations. Its purpose is to throw around the juror, so far as organized government can, a restraint against wrong, fraud or corruption, by requiring that he will well and truly try the issues and a true deliverance make. But when a verdict is reached, it is, after all, but the opinion of men based upon their experience as such, and the evidence in the case.

I also think the motion to quash the information should have been sustained. It contains no allegation as to the manner of using the instrument, and it will be observed that there is no specific charge that it was used on any person. It simply says that it was used with the intent to procure a miscarriage of Floy Ripley. The motion to quash was interposed in apt time on this ground and overruled. The information follows no approved form, so far as I have been able to discover. The intention was evidently to plead in the language of the statute, which in some cases is sufficient, especially where the statute describes the acts constituting the offense; but where the statute does not so specify, as here, then generally good pleading requires that the facts constituting the offense, be pleaded.—*Schneider v. People,* 30 Colo. 493, 71 Pac. 369; *Cochran v. People,* 175 Ill. 28, 51 N. E. 845; *Olmstead v. People,* 30 Mich. 431; *State v. Potter,* 28 Ia. 554.

I think this should have been done in the case here. The information undoubtedly would have been held suffi-

cient had it stated that the defendant used or attempted to use an instrument on Floy Ripley, a woman then and there being with child, by thrusting it into her private parts with intent.to procure her miscarriage.

I am authorized to state that Mr. Justice Hill and Mr. Justice Scott concur in the views herein expressed.

*Reversed.*

Decision *en banc.*

Mr. JUSTICE WHITE not participating.

Mr. JUSTICE GABBERT dissents.

Mr. JUSTICE GABBERT dissenting:

I do not concur in the judgment of reversal. It is based solely upon the ground that it was error to admit in testimony the statement of the prosecuting witness to the effect that the druggist told her he knew a doctor who would help her out of her trouble. Conceding that this testimony was not admissible it is clear that the defendant was not prejudiced by its admission. The two important questions of fact involved were, whether the prosecuting witness was pregnant at the time she called upon the defendant and, if she was, whether he attempted at her solicitation to cause her to have a miscarriage. The testimony stands undisputed that when the witness visited the defendant she was pregnant and went to him for the express purpose of having an abortion produced. The defendant admitted that she told him she had been having illicit relations and that she wanted to know whether she was pregnant. He also admitted that he treated the witness for the purpose of overcoming some difficulty of the womb. It appears without question that after this treatment dead foetal tissue was removed from that organ. In the face of the undisputed facts that the

witness was pregnant; that her sole object in calling upon the defendant was to have him cause her to have a miscarriage, and that after he treated her she was relieved of foetal tissue, the jury very naturally did not believe his testimony.

Why should he treat the prosecuting witness for any purpose except to produce an abortion when she went to him for that purpose only? With her pregnancy and purpose standing undisputed and the defendant admitting, as he did, that he treated her, when according to the undisputed facts his object could have been none other than to cause her to have a miscarriage and that thereafter she was in the condition which would result from the use of instruments with intent to produce an abortion, it is evident beyond question that admitting the statement of the druggist could not and did not have the slightest influence upon the jury.

In my opinion the judgment of the district court should be affirmed.