No. 13,755.

HOWARD *v.* THE PEOPLE.
(51 P. [2d] 594)

Decided November 4, 1935.

Mr. FANCHER SARCHET, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. WALTER F. SCHERER, Assistant, for the people.

*En Banc.*

MR. CHIEF JUSTICE BUTLER delivered the opinion of the court.

C. F. Howard was convicted of being an accessory after the fact to the murder of Charles Rubin by Sam Jones. He seeks a reversal of the sentence.

At the trial a jury was waived, and the case was submitted to the court upon stipulated facts, which substantially are as follows:

On the night of July 25, 1934, Howard and Jones left the village of Estes Park to hunt deer. Jones took his gun along. On the way Jones asked Howard to help him straighten his troubles with Rubin. When they reached Rubin's place, near the village of Estes Park, Howard went to Rubin's house to get things "straightened out." Rubin greeted him in a friendly way. After Howard had been in the house only two or three minutes, Jones fired a shot through the window, killing Rubin. Jones then entered the house, and, according to Howard's statement, said that he would do the same to Howard if he ever crossed him, and that Howard would have to keep his mouth shut. They then left the house. Two days later Jones requested Howard to help him move the body. That night they went in a truck to Rubin's house. The body was lying where it had fallen. They carried the body in the truck to a place about one mile distant. Jones removed the clothing from the body, "so the varmints would dispose of it," and they hid the body among some rocks. Jones took from Rubin's clothing a pocketbook containing about $8. They took the clothing to a place about 150 or 200 feet away from the body and placed it between some rocks, and then went to Jones' place and stayed the rest of the night. Jones there paid Howard $5 that he owed him, gave him half of the money that was in the pocketbook, and threw the pocketbook in the stove and burned it up. In September, 1934, having been notified of the disappearance of Rubin, the sheriff and his deputies commenced a search for him. On the 19th of that month, while engaged in the search, one of the deputies met Howard near Rubin's house and conversed with him concerning Rubin's disappearance. Howard

did not give any information to the deputy concerning Rubin. The sheriff, having received information that led him to believe that Jones was implicated in the disappearance, and possibly the murder, of Rubin, and hearing that Jones and Howard were seen together in Longmont, found Howard and had him accompany him to the sheriff's office. There, the sheriff and other officers questioned him for about one hour, during which time Howard denied all knowledge of any kind or nature of Rubin and his whereabouts, and all knowledge of Jones and his whereabouts. Finally, after an hour of questioning, Howard admitted and stated the facts substantially as above set forth. He thereafter accompanied the sheriff and other officers to the places where the body and the clothing had been hidden by him and Jones. The officers there found the body and clothing. They took them to Fort Collins. Howard there, in the presence of the sheriff and other officers, signed a written statement, which was practically the same as his oral statement. Thereafter an information was filed charging Jones and Howard jointly with the murder of Rubin. Jones had disappeared and was never found. At the trial Howard was found not guilty. There then was filed the present information which charged, in substance, that Howard, at a time and place named, with full knowledge that Jones killed and murdered Rubin, did "unlawfully conceal said crime from the magistrate, and did then and there harbor and protect said Sam Jones, charged with said crime, contrary to the form of the statute," etc.

The court made a general finding that Howard was "guilty as charged in the information." A motion for a new trial was made and denied, and Howard was sentenced to imprisonment.

Section 6646 of Compiled Laws of 1921 provides: "An accessory after the fact is a person who, after a full knowledge that a crime has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime. Any person

found guilty of being an accessory  *  *  *  after the fact shall be imprisoned for any term not exceeding two years, and fined in a sum not exceeding five hundred dollars  *  *  *."

■ 1. Counsel for Howard contends, first, that a person cannot be prosecuted as an accessory after the fact until after the principal has been convicted; and, therefore, as Jones had not been convicted of the murder, Howard was not subject to prosecution as an accessory.

At common law a conviction of the principal was required to precede or accompany that of one charged as an accessory and the accessory was subject to the same punishment as the principal. Wharton's Criminal Law (12th Ed.), §281. Unlike the common law, our statute has made the offense substantive and independent and prescribes a penalty far less severe than that prescribed for the one who commits the original crime. Moreover, the elements of the statutory crime are different from those of the common-law crime. Thus, at common law, the accused must have rendered some assistance to a felon, and that assistance must have been such as to shelter him to some extent from prosecution, as, for instance, by concealing him in his house, and the like. 1 Wharton's Criminal Law (12th Ed.), §281. The statutory offense, unlike the common-law offense, may be committed in either of two ways; namely, (1) by concealing the commission of the crime from the magistrate, or (2) by harboring or protecting the felon.

The offense of which Howard was convicted is a statutory offense, and we hold that the common-law rule invoked by counsel for Howard does not apply.

■ 2. Another contention made by counsel for Howard is that Howard was not subject to prosecution as an accessory because, assuming that he harbored and protected Jones, Jones at that time had not been formally charged with murder. He cites *People v. Garnett*, 129 Cal. 364, 61 Pac. 1114, which seems to support his con-

tention. That case has been expressly criticized and disapproved.

The Nebraska statute concerning accessories after the fact is the same as ours. In *Heyen v. State,* 114 Neb. 783, 210 N. W. 165, defendant's counsel made the same contention that counsel for Howard makes here, and relied upon the Garnett case. The court declined to follow the Garnett decision, saying in part: "When the intention of the legislature and the purpose of the statute, as disclosed by the language used, are considered, the words 'charged with or found guilty of the crime' may mean legal proceedings *subsequent* to the harboring and protecting of the criminal. Law-abiding citizens generally revolt at high-handed crimes and the screening of criminals from justice. The necessity of protecting society from criminal violence and from harbored criminals resulted in common and statutory law condemning accessories. The legislature meant to enact an effective remedy and used language to that end." (Italics are ours.)

One section of the Arkansas statute on the subject has a provision the same as ours. In another section it is provided: "An accessory before or after the fact may be indicted, arraigned, tried and punished, although the principal offender may not have been arrested and tried, or may have been pardoned or otherwise discharged." It will be observed that the word "charged" does not appear in the latter section. In *State v. Jones,* 91 Ark. 5, 120 S. W. 154, the circuit judge sustained a demurrer to the indictment on the ground that the indictment did not allege that a judicial charge or accusation was pending against the principal at the time the defendant was alleged to have committed the acts which constituted the crime of being an accessory after the fact; or, as stated by the Supreme Court, the trial court held that "under the statute it is not a crime to knowingly harbor and protect a felon unless an indictment or other judicial proceedings be then pending against the principal for his

apprehension or punishment.'' The court said among other things: "We do not concur in this interpretation of the statute. * * * One who, with a full knowledge that the crime has been committed, harbors and protects the felon, is guilty as accessory and may be punished as such, whether the principal offender be arrested or not. Any other view of the statute would permit a person to go unpunished who has been guilty of the most flagrant act of harboring and protecting a felon before a warrant of arrest could be procured or an indictment could be returned. * * *

"* * * the language of a statute should be fairly and rationally interpreted so as to carry out the manifest intention of its framers. 'In general, it may safely be said that when words in a statute are susceptible of two constructions, of which one will lead to an absurdity, the other will not, the latter will be adopted.' Endlich on Interpretation of Statutes, 258.

"Now, the words 'charged with,' as applied to the perpetration of crime, cannot be said to have a well-known and established legal significance. Chief Justice Andrews, speaking for the Supreme Court of Connecticut, said: 'The expression "charged with," as applied to a crime, is sometimes used in a limited sense—intending the accusation of a crime which precedes a formal trial. In a fuller and more accurate sense, the expression includes also the responsibility for the crime.' Drinkall v. Spiegel, 68 Conn. 441. * * *

"The Supreme Court of California have taken the contrary view in construing a statute identical in its language (People v. Garnett, 129 Cal. 364); but, with due deference to the learned court, we are unable to agree to that interpretation.

"Reversed and remanded, with directions to overrule the demurrer.''

Believing that the Nebraska and Arkansas cases announce the better rule, we hold that the fact that no formal charge has been made against the principal before

the accessory harbors and protects the principal does not prevent the prosecution of the accessory.

Moreover, the statute defines the crime of being an accessory after the fact, and provides that that crime may consist of *concealing the commission of the crime or harboring and protecting the felon.* The information charges that Howard committed the crime in both ways. The court made a general finding of guilt as alleged; that is to say, it found that Howard committed the crime in both ways. The former clearly does not require a formal charge against the principal. The charge in the conjunctive was permissible. In *Moffitt v. People,* 59 Colo. 406, 149 Pac. 104, we held that where under a statute the offense may be committed in different ways, it is proper to charge it in all possible ways, using the conjunctive where the statute is in the disjunctive. To the same effect see: *Kingsbury v. People,* 44 Colo. 403, 99 Pac. 61; *Walt v. People,* 46 Colo. 136, 104 Pac. 89; *People v. Fitzgerald,* 51 Colo. 175, 117 Pac. 135.

3. The finding of the court was amply supported by the evidence. Indeed, if Howard committed the crime in only one of the two ways, the sentence was proper; but we are of the opinion that the evidence shows that he committed the crime in both ways.

4. Howard's acquittal on the murder charge, it is contended, bars his conviction as accessory. That there is no merit in the contention is too plain to require discussion.

The judgment is affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD, dissenting.

In my view, the record considered, defendant was not amenable to the prosecution resulting in his conviction. The statute (Compiled Laws 1921, §6646) provides that "An accessory after the fact is a person who, after full knowledge that a crime has been committed, conceals it

from the magistrate, or harbors and protects the person charged with or found guilty of the crime.''

Whatever of concealment, or of harboring and protecting one subsequently charged with the crime of murder there was, it all occurred previous thereto. Indeed, until defendant here disclosed the facts pertaining to the homicide by a third party, such third party was not informed against for murder, and when charged this defendant was joined as a defendant. The third party has not been apprehended, but defendant, tried on the charge of murder, was acquitted. Subsequent to his acquittal the information charging him with being an accessory was filed, and on agreed facts, all as in the murder trial, he was adjudged to be guilty.

Construing a like statute, on facts not essentially differing, the Supreme Court of California said that ''the word 'conceal,' * * * means more than a simple withholding of knowledge possessed by a party that a felony has been committed.'' ''Mere silence,'' the court added, ''after knowledge of its commission is not sufficient to constitute the party an accessory. Again, the word 'charged,' as used in the section, means a formal complaint, information or indictment filed against the criminal, or possibly an arrest without warrant might be sufficient.'' Conviction there was reversed. *People v. Garnett*, 129 Cal. 364, 61 Pac. 1114. That case, if followed, as the opinion of the court indicates, would result in reversal of this judgment. But, since the courts of Arkansas and Nebraska have criticised the California holding, the conclusion is that we should do likewise and sustain this conviction. Neither the Arkansas nor Nebraska court, as I study their opinions, has answered the logic of the California decision, nor have we. Besides, neither of the jurisdictions where the criticism was indulged, was considering a state of facts so nearly like the California case as is this record. The Nebraska case is wholly different, and the Arkansas court finds refuge in statutes not to be found in California or here. The Arkansas and

Nebraska courts, as it seems to me, and as I fear our court has done, so appraised the general despicability of the culprit charged with being an accessory, that they felt justified in "making" some law to fit his offending.