# No. 14,335.

## ROBERTS *v.* THE PEOPLE.
(87 P. [2d] 251)

Decided September 19, 1938. Rehearing denied December 27, 1938.

Mr. HORACE N. HAWKINS, Messrs. RINN & CONNELL, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, for the people.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

A JUDGMENT of the district court of Weld county was

entered on the verdict of a jury finding plaintiff in error, Roberts, an ex-chief of police of the city of Greeley, guilty as accessory after the fact to the murder of one Butler. Roberts brings the judgment here for review.

Butler's body was discovered in a well twenty-five miles from his ranch about six weeks after his disappearance. A piece of railroad iron was tied around his neck. An autopsy disclosed two skull fractures on the back of the head occasioned by some blunt instrument or instruments, either of which was sufficient, according to medical testimony, to cause death. The evidence is not controverted that Hat Wier hauled the body from the Butler ranch to the well in Butler's car, Roberts following or preceding Wier in his own car. Neither is it disputed that Roberts assisted in unloading the body, and that Wier tied the weight to it and threw it into the well. On the return trip Wier poured gasoline over the Butler car and burned it, and Roberts then returned Wier to his ranch. From the date of this occurrence until subsequent to the time of the discovery of the body, Roberts, though questioned on numerous occasions by the officers investigating Butler's disappearance, repeatedly denied all knowledge of his whereabouts or what had happened to deceased. Finally Roberts and Wier both were arrested and each then accused the other of the murder; Roberts accusing Wier of killing Butler in his house with an axe, and Wier accusing Roberts of killing him with a chair. The two were charged with Butler's murder and obtained a severance for trial. On separate trials each was acquitted. The district attorney then, after Roberts' acquittal he being tried first, charged Roberts substantially in the language of the statute with being an accessory after the fact to Butler's murder by Wier. After Wier's acquittal of murder the district attorney amended the information charging the homicide to have been committed by a person or persons unknown to the district attorney, and Wier likewise was charged as an accessory to the murder of Butler by a person or persons unknown. Roberts was placed on trial

on the accessory charge first. As soon as the jury retired to deliberate on his case, Wier was placed on trial on the accessory charge against him. The Roberts' jury returned a verdict of guilty while the Wier trial was in progress and thereupon with the consent of the court the district attorney dismissed the accessory charge against Wier.

Roberts presents seventeen assignments of error which we shall consider under six heads. First. That the evidence on the trial of Roberts was to the effect that Wier committed the murder and that the district attorney having changed the information by amendment from a charge of murder of Butler by Wier to murder by an unknown person or persons, that there was a material variance between the charge and the proof; that Roberts was arraigned on one charge and convicted under another. This contention we think not sound. As the trial judge pointed out, the amendment enlarged the charge, making it broad enough to cover a murder by any person, but not eliminating Wier as the perpetrator of it. At this point it is pertinent to consider the statute creating and defining the crime of accessory after the fact. It is as follows: "An accessory after the fact is a person who, after a full knowledge that a crime has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime. Any person found guilty of being an accessory during or after the fact, shall be imprisoned for any term not exceeding two years, and fined in a sum not exceeding five hundred dollars, in the discretion of the court, to be regulated by the circumstances of the case and the enormity of the crime; but if the crime has been committed against the person of a magistrate, of a police or other public officer in the discharge of his duties, it shall be an aggravating circumstance, and the penalty shall be regulated accordingly." §6646, C. L. 1921 (§14, c. 48, C. S. A. '35). It will be observed that it may be committed in two ways; namely, after a full knowledge that a crime has been committed,

by concealing the crime from the magistrate or by harboring the felon.

The case was tried and submitted to the jury on the question of the crime having been committed in the first manner only. Had the defendant been tried on the theory that he harbored an unknown felon when the district attorney intended to rely on the harboring of Wier as a known felon, prejudice might with some reason be predicated on that circumstance. The charge of harboring being withdrawn we are unable to see any possible prejudice resulting from the failure to name Wier as the perpetrator of the offense, and reliance thereon by the people. Defendant may not have been prepared to defend against harboring Wier when charged with harboring an unknown perpetrator of the crime, though we are inclined to the view of the trial judge that the charge was merely broadened without excluding Wier, but he was never called upon to make such a defense. Inability to prepare against or even being misled so that one does not prepare to defend against a specific charge is not prejudicial if that charge is not relied upon and withdrawn from the jury. This is so obvious and reasonable that no authority need be cited in support of the proposition.

What of the commission of the offense by concealment? The information advised the defendant that the state would attempt to prove that Butler was killed; that his killing was felonious; that Roberts had full knowledge of the killing and of its felonious character and concealed it. The evidence offered and relied upon by the people to prove a murder was the testimony of witnesses as to the discovery of the body bearing fatal wounds, with a piece of railroad iron tied to it with wire, in a well many miles from the ranch where deceased lived. The testimony offered to show a killing and its felonious character was that of defendant himself given under oath when he was on trial for murder. The evidence of concealment of the crime offered by the people was defend-

ant's own testimony given on his trial for murder, and the testimony of officers who investigated the disappearance of Butler, and as to Roberts' denial of any knowledge of what had caused Butler's disappearance. Defendant could not have been misled or surprised by testimony of his own given under oath as to events of which he was an eye witness.

 Second. Error is assigned based upon the contention that the evidence is insufficient to support the verdict and judgment. We are of the opinion that this assignment is without merit. Counsel for defendant in his reply brief quotes the following from Wharton on Homicide (3d ed.) page 86, section 68: ''Constituent elements and character of the offense. Two things are laid down in the books as necessary to constitute a man accessory after the fact to the felony of another. First, the felony must be complete; * * * And, second, the defendant must know that the felon is guilty; and this, therefore, is always averred in the indictment.''

The evidence in this case—the testimony of Roberts on his direct examination in his trial for murder which was introduced by the state without objection—discloses that Roberts and Wier went to the Butler ranch on June 21, 1936; that when they arrived Butler was there and alive; that during an argument over some money owed by Butler to Wier, Butler attempted to strike Wier with a stick and Wier hit him twice with an axe; that while Roberts was attempting to hold Wier, Butler got up and ran outside; that Wier went out and brought him back, cursing him and demanding a bill of sale, as payment of the claim he asserted against Butler, on some cows Butler said were mortgaged; that while Butler was walking about the room holding his head Wier struck him again with the axe knocking him down. That Roberts said: ''You have killed him,'' and that Wier replied, designating Butler by a vile epithet, that he intended to kill him. Roberts then asked Wier to help put Butler on the bed which they did. Wier worked over Butler trying to give

him artificial respiration until, as he stated, "I heard a gurgle and I knew he was dead." Wier and Roberts then took the body to the well, Roberts contending that he acted under compulsion by Wier, where it was discovered July 16, 1936, six weeks later. Wier burned Butler's car on the return trip while Roberts waited for him in his car and they then returned home. Roberts repeatedly denied to officers making an investigation of the case that he knew anything about where Butler was or the cause of his disappearance. The foregoing, all from the record of the testimony given by Roberts when on trial for murder, if believed by the jury, was amply sufficient to establish a murder by Wier of Butler, and full knowledge on the part of Roberts that a murder had been committed and his concealment of the crime. There is no suggestion in the record that Roberts had any part in the commission of the murder.

Third. Defendant assigns error on the action of the court in refusing to admit in evidence the verdict, and judgment based thereon, acquitting Wier of the murder of Butler; and in instructing the jury that the fact that Wier was acquitted of committing that crime was not only not binding upon it in the consideration of the accessory charge against Roberts, but such fact was not any evidence to be considered by the jury in determining whether or not the crime was committed, and who committed it if the jury found such a crime to have been committed. We think the court did not err in its ruling and in so instructing the jury. Under the holding in the case of *Howard v. People,* 97 Colo. 550, 51 P. (2d) 594, the accessory statute is held to create a substantive statutory crime and as construed in that case the conviction of the principal is not a condition precedent to the conviction of an accessory, as appears to have been the case at common law. If conviction of the principal were such a condition, refusal to admit in evidence a judgment of acquittal in favor of the principal clearly would be error, for it would bar a conviction of a person charged as an

accessory. There may be a murder committed in fact and still the state may not be able legally to establish it for the purpose of the imposition of a penalty on the murderer. A verdict of acquittal does not establish a status of innocence. Innocence, while it entitles one to an acquittal, is not always present where a verdict of not guilty is returned. If the jury has a reasonable doubt of guilt under all the evidence, even if defendant is in fact guilty, it is its duty to acquit. Innocence is a factual status. Nonliability to account resulting from acquittal is a legal status. The guilt or innocence of an accessory after the fact depends as to one element on the factual status of the principal as to guilt or innocence; not on his legal status as regards liability or nonliability to suffer a penalty. The Howard case is authority for the proposition that full knowledge that a crime has been committed, required by the accessory statute, is a knowledge of the factual status of the perpetrator as to guilt or innocence and not a knowledge of the status of the perpetrator as respects his liability or nonliability to be punished. The action of the accessory in harboring the criminal or concealing the crime cannot affect the perpetrator's factual status as to guilt or innocence but may well be a contributing factor, even the controlling factor, in preventing a conviction for a crime committed. It could not in reason be contended that a conviction of a crime in a case in which the defendant, possibly poorly or inadequately defended, on the testimony of witnesses who never confronted the accessory, and whom he never had opportunity to cross examine, could bind him. If in such case the accessory may require the state to show the facts that establish a killing, and we have no doubt that this is required, then it must be true as to the accessory that the prior conviction is not evidence that a crime was committed. As stated above we have held in the Howard case that our accessory statute creates a substantive crime. As such it is a crime complete in itself and of course before a conviction may be had every

necessary element must be established in the case in which the accessory is on trial, including the factual commission of the antecedent crime concealed or the perpetrator of which was harbored. If a conviction of the accessory may be had without a conviction of the principal, and such may be the case as we held in *Howard v. People, supra;* if the factual commission of the crime must be alleged in the charge against the accessory and proved on the trial, then the conclusion is inescapable that a conviction of the principal would avail the state nothing and casts no additional burden on the defendant if proved or admitted. In *Kirby v. United States,* 174 U. S. 891, 19 Sup. Ct. 574, 43 Law Ed. 890, which was a case where the charge was the receiving of stolen property knowing it to have been stolen from the United States, the court said: ''One of the fundamental guarantees of life and liberty is found in the Sixth Amendment of the Constitution of the United States, which provides that 'in all criminal prosecutions the accused shall * * * be confronted with the witnesses against him.' Instead of confronting Kirby with witnesses to establish the vital fact that the property alleged to have been received by him had been stolen from the United States, he was confronted only with the record of another criminal prosecution, with which he had no connection, and the evidence in which was not given in his presence. The record showing the result of the trial of the principal felons was undoubtedly evidence, as against *them,* in respect of every fact essential to show *their* guilt. But a fact which can be primarily established only by witnesses cannot be proved against an accused—charged with a different offense for which he may be convicted without reference to the principal offender—except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases. The presumption of

the innocence of an accused attends him throughout the trial and has relation to every fact that must be established in order to prove his guilt beyond a reasonable doubt. 'This presumption,' this court has said, 'is an instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created.' *Coffin v. United States,* 156 U. S. 432, 459 [39 Sup. Ct. 481, 493]. But that presumption in Kirby's case was in effect held in the court below to be of no consequence; for, as to the vital fact which the government was bound to establish affirmatively, he was put upon the defensive almost from the outset of the trial by reason alone of what appeared to have been *said* in another criminal prosecution with which he was not connected and at which he was not entitled to be represented. In other words, the United States having secured the conviction of Wallace, Baxter, and King as principal felons, the defendant charged by a separate indictment with a different crime—that of receiving the property in question with knowledge that it was so stolen and with intent to convert it to his own use or gain—was held to be presumptively or prima facie guilty so far as the vital fact of the property having been stolen was concerned, as soon as the government produced the record of such conviction and without its making any proof whatever by witnesses confronting the accused of the existence of such vital fact. We cannot assent to this view.''

Since it is guilt in fact and not an antecedent conviction that the state must prove against the accessory then it is guilt in fact when shown by competent evidence that the accessory defendant must controvert. A judgment of conviction and a judgment of acquittal are equally solemn judicial acts. If on the trial of an accessory a judgment of conviction of the principal does not bind the defendant when offered offensively by the state, and we are convinced it does not, then we do not think it binds the state when offered defensively by the defendant.

Notwithstanding the reflections of counsel for defendant on the soundness of the reasoning in *People v. Beintner*, 168 N. Y. S. 945, we think it is unanswerable. In that case the court said: "In this state the authorities seemingly are in accord that a judgment in the principal's action is not conclusive in the action of the accessory. Whether or not it is prima facie evidence is, as we have seen, in dispute. I see no reason why it should be admissible at all. It establishes nothing that is necessary to be proven in the accessory's action. If a judgment of acquittal of the principal was to be prima facie proof on the trial of the accessory that the principal had not committed the crime, then a judgment of conviction of the principal would be prima facie proof that he had committed it. But the theory under which judgments are admissible as proof of the facts determined shows that the judgment in question is not admissible in the action against the accessory. Judgments, when admissible in evidence, are conclusive determinations upon the facts involved, and are not merely prima facie proof of them. If a judgment were to be merely prima facie proof of the principal's guilt or innocence, then, of course, either side could offer further proof bearing on that question. When the jury came to pass on it, should they consider the judgment in evidence or merely the other proof? If they could consider the judgment, what weight should they give to it? How could they know upon what proof it was rendered, and, without knowing that, what value would it be as evidence, unless as matter of law it was held to be conclusive? To say that it is prima facie evidence seems to mean little or nothing. If it is evidence at all, it must be conclusive, otherwise, it should not be admitted. If a judgment is not res adjudicata on the questions involved it is nothing. *Kirby v. U. S.*, 174 U. S. 47, 18 Sup Ct. 574, 43 L. Ed. 809 [890]; *Miller v. White*, 50 N. Y. 137-143, 144; *Assets Realization Co. v. Howard*, 211 N. Y. 430, 105 N. E. 680; *Caesar v. Bernard*,

156 App. Div. 724-727, 141 N. Y. Supp. 659, affirmed 209 N. Y. 570, 103 N. E. 1122.

"The conclusion is that a judgment in the principal felon's case whether of conviction or acquittal, is not admissible for any purpose in an action against the accessory."

Of like import is the reasoning of the supreme court of Oklahoma, which in the case of *Woody v. State,* 10 Okl. Cr. 322, 136 Pac. 430, used the following language, which appeals to us as a sound statement of the principle of law involved in the instant case: "A verdict of not guilty is not a verdict of innocence. It is simply a verdict of not proven in the particular case tried, and it is not conclusive against the state in favor of any other person than the defendant who was actually acquitted. The state might not be able to make proof of the offense in the trial of one party for many causes, yet might be able to make proof on the trial of the other. Because there may have been a miscarriage of justice as to one joint offender is no reason why there should also be a miscarriage of justice as to the other joint offender."

■ Fourth. Defendant assigns error in that the court improperly admitted testimony of the statement made by Wier in the sheriff's office in the presence of Roberts that he, Roberts, killed Butler and that there was a third party present, in that the same was hearsay. If there was a third person present there is no testimony that he had anything to do with the murder. All the testimony of Roberts is to the effect that Wier committed the murder and no testimony other than Roberts' was introduced on this proposition. The record is replete with testimony of Roberts that he feared Wier would charge him with the murder and that he had done so. That he feared to report Wier as the murderer because he would charge him with committing the crime is his excuse for failing to report it. We are satisfied that there was no prejudice to defendant, particularly in view of the court's instruction that "before the defendant can be convicted,"

the jury must find beyond a reasonable doubt "that a crime, in this case the crime of murder, either of the first or second degree, was committed by some person *other than the defendant himself.*"

██ Fifth. Error is assigned on instructions given and instructions tendered and refused. We have examined the court's instructions and the objections thereto, and those tendered and refused, and find no error either in those given or in the refusal to instruct as requested.

██ ██ Sixth. Error is assigned that the information in the language of the statute is insufficient to charge a crime. The question was not raised prior to trial. In support of his contention defendant cites among other cases *Farrell v. People,* 8 Colo. App. 524, 46 Pac. 841; *Schneider v. People,* 30 Colo. 493, 71 Pac. 369; *Sarkisian v. People,* 56 Colo. 330, 138 Pac. 26; *Ex Parte Goldman,* 7 Cal. Unrep. Cas. 254, 88 Pac. 819. The only one of these cases that deals with the crime of accessory after the fact is Ex Parte Goldman. In the Farrell case the defendant was charged as accessory during the fact for standing by while a robbery was being committed without giving such help as was within his power. The charge was in the exact language of the statute. The court pointed out that since the law does not require one, even though within his power to prevent a robbery at the hazard of his personal safety, the omission should be alleged. We think in so holding the court was clearly right under the facts disclosed in that case. In *Schneider v. People,* the prosecution was for failure of the owner of a carrier ditch to deliver water upon demand and the tender of the established rate of compensation. The statute was general in its terms and if so construed applied to all persons whether they owned or possessed lands under the ditch, whether the water was needed for irrigation of crops, and whether the water was available or not. Under such circumstances the court held that an information in the language of the statute was not sufficient. In

*Sarkisian v. People, supra,* the court said of the information there involved: ''It contains no allegation as to the manner of using the instrument, and it will be observed that there is no specific charge that it was used on any person. It simply says that it was used with the intent to procure a miscarriage of Floy Ripley. The motion to quash was interposed in apt time on this ground and overruled. The information follows no approved form, so far as I have been able to discover. The intention was evidently to plead in the language of the statute, which in some cases is sufficient, especially where the statute described the acts constituting the offense; but where the statute does not so specify, as here, then generally good pleading requires that the facts constituting the offense be pleaded. *Schneider v. People,* 30 Colo. 493, 71 Pac. 369; *Cochran v. People,* 175 Ill. 28, 51 N. E. 845; *Olmstead v. People,* 30 Mich, 431; *State v. Potter,* 28 Ia. 554.''

We think none of the foregoing authorities is applicable in the case at bar. Whether one has knowledge that a murder has been committed is a question of fact. The allegation that one has such knowledge is an allegation of fact. Having that knowledge, whether it was concealed is a question of fact. The allegation that it was concealed is an allegation of fact. If the defendant had attacked the information as insufficient, because not more specific as to the manner and means by which the concealment was effected and the court had ruled against him, whether this would have constituted error we need not here determine for no such attack was made. Having proceeded to trial without raising the question we think the objection now comes too late. Even in a criminal case not every objection to an information which would be good if made in apt time is available to the defendant if he delays until after trial before making it. Conceding that the rule in California as shown in *Ex Parte Goldman, supra,* would establish the insufficiency of the information as to matter of substance under California law, we

are of the opinion that two of the statutes of Colorado require a contrary holding.

Section 447, chapter 48, C. S. A. '35, so far as here pertinent is as follows: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of this code, or so plainly that the nature of the offense may be easily understood by the jury."

Section 453, chapter 48, C. S. A. '35, is as follows: "All exceptions which go merely to the form of an indictment shall be made before trial, and no motion in arrest of judgment or writ of error shall be sustained for any matter not affecting the real merits of the offense charged in such indictment; no indictment shall be quashed for want of the words, "with force and arms," or of the occupation or place of residence of the accused, nor by reason of the disqualification of any grand juror or grand jurors; and in any indictment for murder or manslaughter it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully and of his malice aforethought kill and murder the deceased; and it shall be sufficient in every indictment for manslaughter to charge that the defendant did feloniously kill and slay the deceased."

If by the policy of our law as enacted by the general assembly it is deemed not necessary to set forth the means by which a murder was committed, the penalty for which may be death, we can see no compelling reason for holding that the means by which a concealment of a murder was committed must be set forth when such concealment is but a misdemeanor under the statute, and particularly when that question is not raised until after trial.

The judgment of the trial court is affirmed.

Mr. Justice Hilliard and Mr. Justice Bouck dissent. Mr. Justice Holland not participating.

Mr. Justice Bouck, dissenting.

I dissent.

The decision sustaining the conviction of Roberts, the plaintiff in error, as accessory to murder after the fact is, I think, contrary to sound reason and subversive of basic principles for the judicial determination of facts under the American system of jurisprudence. Assigning numerous errors, Roberts asks for a reversal.

This is not an ordinary case. In two separate trials, Roberts and one Wier had previously been acquitted of the alleged murder of one Butler. The record herein shows that the killing charged in each of these two cases was the identical killing as to which Roberts is now claimed to have been an accessory after the fact. The information herein, filed after Roberts' acquittal of murder, but before Wier's acquittal of the same charge, accused Roberts, substantially in the language of the statute, of being an accessory after the fact to Butler's murder by Wier. Later, after Wier's acquittal of murder, the district attorney amended the information herein by charging that the murder was committed *by a person or persons unknown to the district attorney.* An information was thereupon also filed against Wier, charging him similarly with being an accessory to the murder of Butler by a person or persons unknown, which information was dismissed on motion of the district attorney after the aforesaid conviction of Roberts.

It is argued on behalf of the people that the acquittal of Roberts and the acquittal of Wier on the respective murder charges meant only that "the state may not be able to establish [the murder] for the purpose of the imposition of a penalty on the murderer." It is contended that a verdict of acquittal "does not establish a status of innocence." This latter proposition, I submit, is not true. Nor is it supported by any recognized authority or by any sound reasoning. As a matter of established procedure, a jury verdict must find a defendant either guilty or not guilty; if found not guilty, the de-

fendant is, by the the prescribed rules of law and procedure, and according to the plain meaning of language, declared to be innocent. The defendant is in fact and in the fullest sense "presumed to be innocent" unless and until a specified amount of proof is supplied and such is the universal instruction given to the jury. It would be a social and judicial tragedy if a defendant, when found by a jury to be not guilty of a crime charged against him, were denied the legal effect of the verdict. So long as juries constitute an integral part of our criminal procedure, a jury verdict must be accepted by all law-abiding citizens as final and conclusive—in exactly the same way that judgments of courts must be accepted—unless a competent court declares the verdict to be contrary to law. It would work a travesty of justice to permit a not guilty verdict to be virtually set aside and a declaration of guilt to be made in a purely collateral case by convicting a person of being an accessory to one who has by the recognized criminal procedure been found not guilty when charged as a principal felon. To say that a murder has been solemnly declared not to have been committed by A, but that nevertheless B can be found guilty of being an accessory to A in the murder of which A has thus been duly and regularly absolved, seems to me such a palpable fallacy as makes the supposed reasoning mere sophistry and unworthy technicality. Technicalities are as odious when tolerated against a criminal defendant as when they are resorted to in his behalf.

Of course, both reason and authority support the proposition laid down by this court in the case of *Howard v. People,* 97 Colo. 550, 51 P. (2d) 594, namely, that, under such a statute as Colorado has enacted to define accessories after the fact, the question of guilt or innocence of the alleged accessory can be determined without awaiting a conviction or even a prosecution of the alleged principal. If for any proper reason satisfactory to the prosecuting officers no prosecution of the alleged principal has occurred, as was true in the Howard case, supra,

where it appeared that the supposed principal "had disappeared and was never found," public justice and common sense necessarily demand that the district attorney shall be permitted to try the alleged accessory first and in the absence of the principal, assuming of course the burden of proving beyond a reasonable doubt not only the facts claimed to prove the defendant an accessory, but also the commission of the principal crime by the principal offender, who of necessity must be somebody other than he that is on trial as the alleged accessory after the fact. It is clear that the Howard case is inapplicable to the facts before us. It is true that where the person suspected of being a principal felon has not been first tried, he may be tried and found not guilty after his alleged accessory has been convicted. This has been used as an argument to show that one man may be guilty of being an accessory where the other man is not guilty as the principal. A moment's reflection will disclose that such supposed accessory would then be the innocent victim of a serious miscarriage of justice and that even judicial proceedings sometimes demonstrate the human fallibility of courts. The given illustration would not turn a non-murder into a murder; it would simply suggest executive clemency for a man convicted by unavoidable mistake.

However, it is argued that the murder alleged is not a murder by Wier, but—by amendment of the information, substituting an unknown person or unknown persons for Wier as the alleged murderer—is an entirely different murder from the one originally charged. Such amendment of the information should be considered reversible error. First, the change was made without any showing to justify it. Secondly, it could only confuse the jury; the change could have produced no result except to inject a framework for improper inferences and sources of distraction on the part of a jury of laymen. Thirdly, no one can read the evidence without knowing that, if a murder was committed, it was committed either by the

268

defendant Roberts or by Wier; that if Roberts was an accessory, it could be only with reference and in relation to Wier, whose name as principal was deliberately expunged from the information when the impossible "unknown person or persons" were substituted. It is idle to find that the "murderer" was unknown to the district attorney when he and his staff had tried two previous cases directly involving the alleged murder and had elicited the evidence which shows that, if a murder was committed at all, either Roberts or Wier was the murderer, and nobody else, and that it was Wier who was concealed from the magistrate, if anybody was. There is no evidence tending to show, nor is it contended, that anyone but Roberts and Wier was involved. If, as seems to be the fact, the information is intended to import that somebody other than Wier was the murderer, it was an unauthorized amendment because inconsistent with the facts brought out at the trials.

Wier having been acquitted of murder, as we have seen, the law certainly should not be allowed to employ the paradox that, though Wier was charged as the principal offender and has been found not guilty, Roberts, charged as his accessory, is guilty of concealing Wier as the principal offender when the latter has been thus solemnly declared not to be a principal offender at all according to the law of the land. A person cannot be guilty and not guilty of a particular murder at the same time. A murder cannot truthfully be said to have been committed by one who is regularly found not guilty of it.

As I have already pointed out, the radical change made in the information—from Wier as the alleged principal to "a person or persons unknown to the district attorney" —may change the outward appearance of the charge but it cannot change the facts. Nothing can change the fact that under the evidence before us no other person than Wier and Roberts could have done the killing. Whether the verdict acquitting Roberts of murder was due to a showing of self-defense or of coercion exercised

by Wier, or was due to some other legal ground, we have no means of knowing; whether the verdict acquitting Wier of murder was due to a showing of insanity or other legal defense we cannot tell. The record contains evidence which tended to support some of these defenses. We have therefore a right to draw the inference that the evidence was sufficient to raise a reasonable doubt in regard to the guilt of each defendant.

In regarding the amendment as immaterial, and saying that the substitution of the indeterminate "unknown person or persons" for the definite name of Wier merely "enlarged the charge, *making it broad enough to cover a murder by any person, but not eliminating Wier as the perpetrator of it*" (italics mine), this court announced a doctrine not found anywhere else in criminal jurisprudence.

I fear it is not promoting the cause of loyalty to our institutions and government, or confidence in our courts, to use language—as does the majority opinion—which would naturally be taken as casting upon every criminal acquittal the suspicion of being a miscarriage of justice.

Compare, as illustrating the principle I have tried to invoke, the following cases:

*Kelley v. the State,* 79 Fla. 182, 83 So. 506; *State v. Antoine,* 42 La. Ann. 945, 8 So. 529; *State v. Haines,* 51 La. Ann. 731, 25 So. 572; *State v. Fabiano,* 175 La. 983, 144 So. 735; *Ray v. State* (accessory after the fact), 13 Neb. 55, 13 N. W. 2; *State v. Tom,* 13 N. C. 569.

Of course, where an accessory is tried and punished as a principal, the rule does not apply. In Colorado, however, an accessory after the fact is not a principal. '35 C. S. A., c. 48, section 14.

For the reasons above stated, I am convinced that the judgment should have been reversed by this court and the case remanded to the district judge with instructions to dismiss the case and discharge the defendant.