No. 22496.

CHARLES ROOKS SELF *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(448 P.2d 619)

Decided November 25, 1968.     Rehearing denied January 13, 1969.

294

KINGSLEY and WOLF, ALBERT WOLF, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES W. CREAMER, JR., Assistant, AUREL KELLY, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

PLAINTIFF in error, who will hereinafter be referred to as the defendant, was convicted of the misdemeanor of being "an accessory after the fact to murder." Trial was to the court, the defendant having waived his right to be tried by a jury. He seeks reversal of this judgment on several grounds which are detailed after the summarization of the facts.

On March 16, 1965, defendant was with his paramour, Mrs. Brown, in Boulder. Defendant was then 18 years old and a freshman at the University of Colorado. Mrs. Brown, a divorcee, was then 29 years old and the mother of a small child. Earlier that evening, defendant and Mrs. Brown had visited several places, where they drank alcoholic beverages. When they arrived at Mrs. Brown's home after midnight, she told defendant that she was going to kill their mutual friend, James Michael Pearson, when she saw him again. It was indicated that Pearson's "Nazi" beliefs motivated this statement and her subsequent actions against him. Defendant helped Mrs. Brown load her Luger gun, which she put in her coat pocket. Defendant then voluntarily drove her to Pearson's residence in her station wagon. When they arrived at Pearson's apartment, Mrs. Brown, for the first time, threatened defendant just prior to her entry into the building in which Pearson's apartment was located. Shortly thereafter, Pearson emerged from the building followed by Mrs. Brown who ordered him into the station wagon at gunpoint. Defendant then drove Mrs. Brown and Pearson into Bluebell Canyon and stopped where ordered to by Mrs. Brown. Mrs. Brown forced Pearson out of the car. They went up the road a few feet and she shot him twice. Meanwhile, defendant remained in the car. The killing having been accomplished, Mrs. Brown got back into the car with the waiting defendant. Mrs. Brown drove the car from the scene

of the slaying back to her home, and as she drove, defendant unloaded the murder weapon. He testified that he had no fear of Mrs. Brown after the killing occurred.

Defendant returned with Mrs. Brown to her apartment, where he cleaned the gun and liberally lubricated the outside of it. Defendant then wrapped up the gun and taking a shovel with him hiked more than a half-mile into the hills to bury it. He hid the gun in a rock crevice and covered it with dirt and snow. He then urinated on the hiding place "to look more or less like melting snow, to not have disturbed the surface."

The next day defendant attended his University classes as usual. That afternoon a telephone caller told defendant that Pearson had committed suicide the previous night, according to defendant's testimony. After this call, defendant went to the deceased's apartment, where he was met by a police officer who came there in the course of his investigation of Pearson's death. Defendant told the officer that the last time he had seen Pearson was at a campus cafe the night before, and defendant volunteered his information that Pearson was a suicide victim. He also repeated the suicide story to other investigating police officers.

Later that evening, defendant was taken to the police station. After being first fully advised of his constitutional rights, he was questioned about Pearson's death. In response to questioning, defendant admitted that he had driven the car into Bluebell Canyon; that he had witnessed the killing; and that he knew the person who did the shooting. However, defendant refused to tell the police the name of the killer, although he was asked several times, and defendant testified that he led the officers "off on some wild tale about international intrigue of some sort." When asked whether the killer was Mrs. Brown, defendant did not answer. Later that same evening, defendant named the slayer and took the police to the place where he had hidden the gun.

Mrs. Brown and defendant were each charged with

first degree murder and conspiracy to commit murder. The information filed against defendant was later amended, and he was charged under C.R.S. 1963, 40-1-13 with being an accessory after the fact of murder. Defendant with his counsel present waived jury trial, and after trial to the court he was found guilty as charged.

Defendant asserts six assignments of error as follows: (1) the "accessory after the fact" statute is unconstitutional, because it is too vague; (2) defendant's confession was erroneously admitted into evidence before independent evidence of the corpus delicti had been received; (3) defendant's motion for acquittal should have been granted because there was no independent evidence of the corpus delicti of the crime charged against defendant; (4) the trial court unconstitutionally interpreted the statute under which defendant was charged so as to infringe defendant's constitutional right against self-incrimination; (5) the trial court's denial of defendant's motion for a bill of particulars compelled defendant to go to trial without being fairly apprised of the nature of the charge against him; and, (6) the evidence was insufficient to support the trial court's findings of guilt. All of these contentions will be covered in the course of this opinion.

The pertinent portion of C.R.S. 1963, 40-1-13, under which defendant was charged is as follows: "An accessory after the fact is a person who, after a full knowledge that a crime has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime."

We find no merit in the argument that this statute is so vague as to be unconstitutional. It gives fair warning of the conduct forbidden and men of common intelligence can readily apprehend the statute's meaning and application. This is the accepted test in this jurisdiction. *People v. Heckard,* 164 Colo. 19, 431 P.2d 1014; *Memorial Trusts v. Beery,* 144 Colo. 448, 356 P.2d 884.

■ Defendant points to the word "magistrate" as a fatal ambiguity in C.R.S. 1963, 40-1-13, contending that no such official exists in our state. However, defendant's contention presupposes the use of the term "magistrate" in its narrow sense only of an inferior judicial officer, whereas in a general sense the term connotes a public officer exercising a public authority. 48 C.J.S., *Judges,* Sec. 2, p. 951. The latter broad connotation has been long accepted in Colorado. In *People v. Curley,* 5 Colo. 412 at page 416 this court stated:

"The word *magistrate* itself is a *generic term,* including many public civil officers, executive and judicial, from the president of the United States down to justices of the peace. A police magistrate, without other legal definition, supposes some officer of the State, or some municipal division thereof, invested with authority — *executive* or judicial, relating to the administration of *police* or municipal laws." (Emphasis supplied.)

The facts in the instant case are strikingly analogous to those in *Howard v. People,* 97 Colo. 550, 51 P.2d 594 in which this court affirmed the defendant's conviction as an accessory after the fact. In the *Howard* case, the defendant helped the murderer hide the body and the clothing of the slain person and thereafter claimed ignorance of the crime when questioned by the police. In the case here before us the defendant hid the gun which was used in the slaying, after first cleaning and oiling the weapon. Thereafter he claimed ignorance of the crime and also voluntarily gave false information that the homicide victim committed suicide. The following conclusion stated by this court in *Howard* has application here.

"The finding of the court was amply supported by the evidence. Indeed, if Howard committed the crime in only one of the two ways, the sentence was proper; but we are of the opinion that the evidence shows that he committed the crime in both ways."

■ The foregoing statement from *Howard* reflects

this court's recognition of the broad connotation to be applied to the word "magistrate" as used in our statute on accessory after the fact. To ascribe the narrow connotation to the word "magistrate" as being solely a judicial officer or judge would be unwarranted. Crimes are not reported for investigation and solution to those within the judicial branch. This function is within the authority and responsibility of law enforcement officers. The meaning and obvious intention behind our statute on accessory after the fact is to make it unlawful to do what is prohibited as against those who are charged with the responsibility of investigating crimes, gathering evidence, ascertaining the identity and whereabouts of persons who have committed crimes, and capturing the wrongdoers. The concealment of a crime and the harboring and protecting of the wrongdoer are actions which are plainly meant to be of some assistance to the principal by hindering or intending to hinder the function of law enforcement officers with regard to their duty of investigating and solving crimes.

██ The acts of the defendant fall within the purview of the Colorado statute defining the offense of an accessory after the fact, and typifies a kind of behavior which has long been proscribed by a law-abiding society. Since the early days of the English common law, it has been generally held that any assistance whatever given to one known to be a felon, in order to hinder his being apprehended or tried or suffering punishment, makes the assistor an accessory after the fact. *King v. Levy,* 1 K.B. 158 (1912).

██ Neither does the statutory phrase "charged with" pose any problem with respect to its interpretation as applied to the facts of this case. Mrs. Brown was charged with murder and the fact that this charge was laid after defendant's offense was consummated is not significant. In *Howard v. People, supra,* the court held that the phrase "charged with," as used in the accessory after the fact statute, means more than a mere formal charge

and includes responsibility for the crime. We perceive no impelling reason to overrule this long-established construction which legitimately takes into consideration the necessity for the accessory after the fact statute and the evil against which society is thereby sought to be protected. *People v. Heckard, supra; Cross v. People,* 122 Colo. 469, 223 P.2d 202; *Dekelt v. People,* 44 Colo. 525, 99 P.330.

The trial court did not err in overruling defendant's motion for a bill of particulars. The disposition of this motion was within the trial court's discretion. No abuse of that discretion has been shown, and therefore, the court's ruling is not subject to reversal. *Johnson v. People,* 110 Colo. 283, 133 P.2d 789; *Stewart v. People,* 86 Colo. 456, 283 P.47. The defendant was fairly apprised of the offense charged against him. The crime of being an accessory after the fact, as defined by C.R.S. 1963, 40-1-13, is a single one. This statute merely describes two different ways in which the offense may be committed and, although the statute states the two ways disjunctively, the amended information correctly stated them conjunctively and was not thereby duplicitous. *Hernandez v. People,* 156 Colo. 23, 396 P.2d 952; *Marrs v. People,* 135 Colo. 458, 312 P.2d 505; *Howard v. People, supra,* and *Rowe v. People,* 26 Colo. 542, 59 P.57.

Defendant's contention that the trial court erred in admitting defendant's confession prior to the corpus delicti having been independently established must be overruled. The order of proof in the admission of a confession is discretionary with the trial court in a jury trial. *Williams v. People,* 114 Colo. 207, 158 P.2d 447. *A fortiori* where trial is to the court the time of admission of a confession is far less subject to serious objection.

The court properly denied defendant's motion for acquittal, because there was sufficient independent evidence of the corpus delicti to corroborate defendant's confession. There was independent proof of the murder

to which defendant was charged with being an accessory after the fact, and there was corroborative evidence of defendant's accessorial acts. The police found the murder weapon in the same place and in the same condition as defendant had previously described to them. Also, several police officers testified as to defendant's volunteered statements of Pearson's suicide, which fact he knew was untrue. This evidence more than meets the requirement of "slight" independent evidence of the corpus delicti. *Hampton v. People,* 146 Colo. 570, 362 P.2d 864.

Defendant's constitutional privilege against self-incrimination was not violated. An accessory after the fact, by definition, does not assent to the commission of the principal's crime. And the statute does not impose liability upon defendant for his failure to reveal his complicity, but rather for his affirmative acts which constituted the interdicted conduct.

There is substantial competent evidence to support the judgment.

Judgment affirmed.

Mr. Justice Pringle not participating.